## J. F. ROWLEY CO. v. ROWLEY.

### Nos. 5285, 5286.

Circuit Court of Appeals, Sixth Circuit.

April 11, 1930.

Albert H. Bates and Albert R. Teare, both of Cleveland, Ohio (Bates, Golrick & Teare and Sam B. Fitzsimmons, all of Cleveland, Ohio, on the brief), for appellant.

Before MOORMAN, HICKS, and HICKENLOOPER, Circuit Judges.

HICKS, Circuit Judge.

Appeal (1) from a decree dismissing the bill in No. 5285 on the ground that patents No. 1,090,881, March 24, 1914, and No. 1,-322,059, November 18, 1919, both to J. F. Rowley involving ankle joints in artificial limbs are invalid for lack of invention; and (2) appeal from a decree dismissing the bill in 5286 on the ground that there was no threat of or reason to apprehend infringement of patents No. 1,368,575, February 15, 1920, and No. 1,375,860, April 26, 1921, both to J. F. Rowley known as the suspender patents.

Patent No. 1,090,881. Its principal object was to eliminate the "squeak" incident to the use of artificial ankle joints. Claim No. 1 is printed.[1] The claims of the patent cover substantially nothing new except the ball-bearing element (Frees No. 742,853, November 3, 1903; also Fig. 3 and reading matter

on page 21 "True Artificial Limbs," a catalog published by the True Artificial Limbs Company, Niagara Falls, New York, 1913.) It was old in artificial ankle joints to use an outer tubular member into which was fitted a shaft, but in such device the alternating rocking movement of the outer member, sometimes called the barrel, and the shaft caused friction, unless the parts were kept lubricated, between the surface of the shaft and the inside surface of the barrel with the accompanying "squeak" peculiar to metal surfaces wearing upon each other. The ball bearings introduced by J. F. Rowley and located in races upon the outer surface of the shaft (patent No. 1,090,881), reduced the area of the surfaces brought into contact with each other and converted sliding friction into rolling friction, and thus in a large measure eliminated the squeak. But ball bearings are old. They are in general use, and it is commonly understood that they reduce friction and the attendant noises, and it is obvious that their use here arose out of nothing more than the thought of a mechanic. It was not invention. It was simply the adaptation of an old device to the same use in a different structure. Ball bearings had already been used in a limited way in ankle joints in Fenner, No. 667,511, February 5, 1901. They accomplish no other purpose in Rowley's ankle joint than they would accomplish in any other relationship. Standard Caster & Wheel Co. v. Caster Socket Co., 113 F. 162, 164 (C. C. A. 6); Stearns & Co. v. Russell, 85 F. 218, 227 (C. C. A. 6); L. Schreiber & Sons Co. v. Grimm, 72 F. 671, 674 (C. C. A. 6); City of St. Louis v. Prendergast, 29 F.(2d) 188, 192 (C. C. A. 8). See, also, Huebner-Toledo Breweries Co. v. Matthews Grav. Carrier Co., 253 F. 435, 445 (C. C. A. 6).

Nor is there invention in extending the barrel or shortening the shaft of plaintiff's ball-bearing ankle joint device to provide pockets for lubricants between the end of the shaft and the head of the barrel, and thus facilitate the passage of such lubricants to the bearing surfaces. Such a receptacle evidences nothing beyond the thought of a mechanic, and is a feature old in the ball-bearing art.

Patent No. 1,322,059. In patent No. 1,-090,881, the tubular outer member (barrel) and its connecting shank were of integral con-

---

[1] "1. In a joint for artificial limbs, the combination of a tubular outer member having a shank extending outwardly from its side, a cylindrical member in said tubular member having a plurality of annular ball races and balls in said races contacting with the inner surface of said tubular member, a slot extending part way around the circumference of said tubular member, and a shank secured to said cylindrical member and extending outwardly through said slot."

struction. The object of No. 1,322,059 was to provide an improvement thereon by using a commercial steel tube for the barrel and by forming the shank separately out of soft steel and fashioning on its end a fork or bow with holes drilled or punched through the bow ends, clevis-like, at right angles with the shank; by heating and expanding this device and forcing the tube or barrel through the rings or holes until they were equi-distant from the ends of the tube; and by allowing the rings to cool and shrink, tire fashion, upon the barrel to form the permanent union. This construction was no doubt economical and convenient, and the prongs of the fork may have acted somewhat as braces, but we fail to discover any inventive conception in it. It had no novel elements either separately or in combination. It was old in practice, and was no more than might reasonably be expected of any skilled machinist, blacksmith, or metal worker. Concrete App. Co. v. Gomery, 269 U. S. 177, 185, 46 S. Ct. 42, 70 L. Ed. 222; Condit v. Jackson Corset Co., 35 F.(2d) 4, 6 (C. C. A. 6), and cases there cited. Such device substantially so fashioned, except that the rings were not united to the tube, but rotated upon it (Defendant's Exhibits E and G), was used in artificial ankle joints by Winn in 1910.

Patents No. 1,368,575 and No. 1,375,860. In April, 1926, defendant made and sold a leg, called for convenience the Stefanik leg. Between February 13, 1925, and June 9, 1926, he made and sold about ten or twelve other legs similar to the Stefanik. He made no such legs before or after these dates. During this period he had an application pending in the Patent Office for a patent on the Stefanik type. On June 9, 1926, this application was rejected upon the J. F. Rowley patent No. 1,375,860. This rejection was the first knowledge defendant had of this J. F. Rowley patent. He had not been advised of it by the plaintiff, the J. F. Rowley Company, or by his brother, J. F. Rowley. Defendant immediately ceased the production of the Stefanik type. There is no suggestion that defendant's infringement, if there was infringement (a point not determined by the District Judge), was willful or inexcusable as in the case of Miller Rubber Co. v. De Laski & Thropp C. W. Tire Co., 257 F. 733, 738 (C. C. A. 6). Nothing indicates that defendant intends to ever again produce or sell the Stefanik leg.

Plaintiff's bill was not filed until June 24, 1927. Defendant answered and set up the defense of noninfringement and invalidity, but this carried no inference that defendant intended to infringe. Defendant was then, and for more than a year had been, producing and selling artificial legs of a different type. The bill charged him with infringement within six years and continuing up to the date of suit. It was not unreasonable that defendant infer that the leg he was then producing was in suit, and he was justified, therefore, in making the defense indicated. It was not until the hearing that plaintiff conceded that defendant's new product was not an infringement.

We conclude, therefore, that there was no error in dismissing the bill upon the ground that the remedy was not one in equity for an injunction. Kennicott Water Softener Co. v. Bain, 185 F. 520 (C. C. A. 7); Goshen Mfg. Co. v. Hubert A. Myers Mfg. Co., 215 F. 594, 597 (C. C. A. 7). It is proper to say that before the court dismissed the bill it offered, if plaintiff desired, to transfer the case to the law side and amend the petition for the recovery of damages for the past infringement.

It results that the decrees in both cases are affirmed but the decree in No. 5286 (District Court No. 2318) is, in what occurs to us as a reasonable exercise of equity jurisdiction, so modified as to provide that plaintiff may apply to the court at the foot of the decree for injunctive relief if at any time there is such change in the present situation as may in the opinion of plaintiff make such application necessary, and for this purpose the case is remanded.