**MINNESOTA MINING AND MANUFAC-
TURING COMPANY, a corporation
of Delaware, Plaintiff,**

v.

**The CARPENTER PRINTING CO., Inc.,
et al., Defendants.**

**Civ. A. No. 34709.**

United States District Court
N. D. Ohio, E. D.

Sept. 18, 1964.

Thomas V. Koykka, of Arter, Hadden, Wykoff & Van Duzer, Cleveland, Ohio, Harold J. Kinney, St. Paul, Minn., for plaintiff.

Bruce B. Krost, Chas. Cavano and Harvey Oliver, Cleveland, Ohio, for defendants.

KALBFLEISCH, District Judge.

In a memorandum filed March 12, 1963, this Court granted plaintiff a partial summary judgment, holding "(1) that the plaintiff's patents in question are valid patents, and (2) that some plates were manufactured by Polychrome [Corporation] in violation of those patents." Plaintiff now has renewed its motion for summary judgment, requesting a permanent injunction greatly expanded in scope from the preliminary injunction currently in effect which enjoins defendants Paul and Ellison Carpenter and the Carpenter Printing Co., Inc. from using presensitized metal lithographic plates manufactured by Polychrome Corporation before this suit was commenced. The defendants have moved for a summary judgment on the grounds that they would not infringe plaintiff's patent in the future and that full payment to plaintiff by Polychrome made defendants' use of the infringing plates noninfringing.

In its earlier memorandum the Court stated, on page 5:

"Because the defendants specifically stated that they did not know how these accused plates were made, and because the Chicago litigation did not determine that question, the Court is of the opinion that the isues of whether the plates here in question were made in violation of the plaintiff's patent rights and, if so, whether the plaintiff is entitled to a permanent injunction are still before this Court."

At a deposition taken subsequent to that memorandum, Mr. Robert Gumbinner, vice president of the Polychrome Corporation, testified that between April of 1958 and March of 1959 the Polychrome Corporation sold approximately $1,575 worth of Dualkote plates (Gumbinner Dep. Ex. No. 1) to the defendant Photo Composition Company, Inc.; the parties admit these plates were declared to be infringing in the Chicago suit. The Carpenter Printing Co., Inc., received some of these infringing plates, and thus far these are the only infringing plates known to have been used in any way by defendants.

The defendant corporations which received and used the Dualkote plates have infringed plaintiff's patent. 35 U.S.C.A. § 271(a) states:

"Except as otherwise provided in this title, whoever without authority makes, uses or sells any patented invention, within the United States during the term of the patent therefor, infringes the patent."

It has not been shown that the individual defendants have done more than act in their official capacities. The evidence thus far adduced by depositions has not clearly revealed the extent of the participation of the individual defendants in purchase, use and sale of the infringing plates. 35 U.S.C.A. § 271(b) states:

"Whoever actively induces infringement of a patent shall be liable as an infringer."

Bewal, Inc. v. Minnesota Mining & Mfg. Co., 292 F.2d 159, 167 (1961) has held that:

"Corporate officers are not liable for patent infringement where they have not been active other than as such officers, but if they wilfully and knowingly participate in, induce and approve acts of infringement, they are liable with the corporation for the wrongful acts."

From the depositions of defendants Paul and Ellison Carpenter, and of Robert Wade, the "general manager or pro-

420

duction manager" of Photo Composition for approximately the past twelve years, the following facts have been established: (1) Paul and Ellison Carpenter operated a partnership until 1956, when they formed the two defendant corporations. (2) Ellison Carpenter has been president of Photo Composition and an officer of Carpenter Printing, and Paul Carpenter has been president of Carpenter Printing and an officer of Photo Composition, since their incorporation. (3) Robert Wade testified that beginning in April of 1958 Photo Composition "switched over completely" from plaintiff's plates to the Polychrome plates "primarily" for the reason there was greater savings with the Polychrome plates and "the first trial packages proved to give us the same end results." (Pltf.'s Ex. X, p. 7.)

After having been informed by counsel that plaintiff's suit against defendants was commenced August 6, 1958, Mr. Wade testified:

"Then I am inclined to believe that discontinuing the use of Polychrome plates was not primarily the fact that they were no good but due to the fact that we were sued for using them." (Ex. X, p. 8.)

Mr. Wade then was questioned as to why use of Polychrome plates was continued until March of 1959, nearly seven months after commencement of the suit. Mr. Wade answered as follows:

"No, it didn't. There was quite a stretch in there, but I believe we were not aware at the beginning or I was notified by Tom that we had to stop using all the other plates or that he wasn't completely sure that for legal reasons we had to. I believe it took this length of time or the course of the depositions for Tom to realize that we were probably sticking our neck out by using other plates that we were not sure weren't infringing on someone else's patent." (Ex. X, pp. 8–9.)

In determining whether a permanent injunction should issue, the Court notes the general guidelines to be used in pat-

ent suits stated by Judge Jones of this Court in Gordon Johnson Co. v. Hunt, 109 F.Supp. 571, 574 (N.D.Ohio, E.D., 1952):

"The general principles of equity relative to injunctive relief apply to patent suits. * * * The granting or withholding of an injunction is a matter addressed to the sound discretion of the court. It must balance the respective equities of the parties and determine the probable damages to one or the other which will result from granting or refusing relief."

■ The absence of threatened present or future infringement has been held to dispense with the necessity for an injunction. Hamilton Standard Propeller Co. v. Fay-Egan Mfg. Co., 101 F. 2d 614 (6th Cir. 1939); J. F. Rowley Co. v. Rowley, 39 F.2d 865 (6th Cir. 1930); Mershon, et al. v. O'Neill, 73 F.2d 68 (2 Cir., 1934); Gwynn, et al. v. Ranco, Inc., D.C., 36 F.Supp. 584 (1940), rev'd. on other grounds 128 F.2d 437 (6th Cir. 1942). The infringement thus far admitted cannot be said to show plaintiff has an absolute right to a permanent injunction, since the evidence does not prove that the defendants threatened any present or future infringement. Furthermore, the Court does not have before it evidence sufficient to balance the respective equities and the probable damages to one or the other party which will result from sustaining or overruling plaintiff's motion for a permanent injunction.

Plaintiff's motion for summary judgment will be overruled.

■■ Plaintiff has waived its claim for damages in this action. Defendants charge that full payment by Polychrome of plaintiff's damages, which resulted from the infringing plates, has made defendants' use of the plates retroactively non-infringing. However, plaintiff has sued Polychrome and defendants in separate suits as infringers, and plaintiff is entitled to full satisfaction against each and every infringer. Wilson v. Union

Tool Co., 265 F. 669 (9 Cir., 1920), aff'd. 259 U.S. 107, 42 S.Ct. 427, 66 L. Ed. 848 (1921); Sherman, Clay & Co. v. Searchlight Horn Co., 225 F. 497, 140 C.C.A. 539 (1915).

Plaintiff obviously feels it cannot be fully satisfied until defendants are permanently enjoined from future infringement. If plaintiff proves that it is entitled to a permanent injunction in the present suit, then it is manifest that plaintiff was not "fully compensated" by Polychrome within the meaning of Wagner Sign Service, Inc. v. Midwest News Reel Theatres, Inc., 119 F.2d 929 (7 Cir., 1941), appeal dismissed 314 U.S. 702, 62 S.Ct. 50, 86 L.Ed. 562 (1941).

Threatened present or future infringement by the defendants is a genuine issue of fact which cannot be resolved upon the present state of the case.

Defendants' motion for summary judgment will be overruled.