## CONDIT v. JACKSON CORSET CO.

Circuit Court of Appeals, Sixth Circuit.
October 11, 1929.

No. 5144.

Laurence A. Janney, of Chicago, Ill. (Emery, Booth, Janney & Varney, of Washington, D. C., A. Trevor Jones, of Chicago, Ill., on the brief), for appellant.

Merrell E. Clark, of New York City (Henry R. Ashton and Fish, Richardson & Neave, all of New York City, on the brief), for appellee.

Before MOORMAN, HICKS, and HICKENLOOPER, Circuit Judges.

HICKS, Circuit Judge. Suit for infringement of claims 1 and 2 of Mayer patent, No. 1,486,779, granted March 11, 1924, for girdle brassieres and girdles.[1] The de-

[1] "1. A garment comprising a girdle constructed and arranged to encircle the figure from the waist downwardly over the hips; said girdle comprising fabric front and back portions to cover respectively the abdominal and back portions of the figure, and elastic webbing hip-covering portions at the sides secured to said front and back portions respectively and constructed and arranged to conform to the contour of the figure at the hips; one of said elastic webbing portions being divided longitudinally

fenses were (1) lack of invention; (2) anticipation; and (3) noninfringement. Admittedly there was infringement, if the claims were valid. The District Judge found the claims in suit invalid.

To save claim 2 from anticipation by prior art garments, plaintiff insists that it should be construed (1) as if it read "(2) a closed front girdle constructed and arranged to encircle the figure in the region of the hips, comprising, in combination, closed fabric front portion and a *closed* fabric back portion for covering, respectively, the abdominal and back portions of the figure," etc.; and (2) that the "series of independent fastening elements" (lines 44, 46), should be read "such as hooks and eyes," and so as to exclude any fastening elements, such as buttons or large clasps, that would by their prominence break the continuity of the girdle about the waist, or impair the imperceptibility of the garment through the outer clothing, or the flexibility of the fastening means. The use of the word "closed" before the words "fabric front portion," and in the same connection the failure to use the word "closed" before "fabric back portion," naturally carries an inference that the fabric back portion was not to be closed, or at least that it was not particularly material whether it was left closed or open; but, upon the other hand, the expression, "*a fabric back portion for covering*," would indicate that only an integral back portion was intended, and this idea is embodied in the specifications, which refer to the closed fabric back in the drawing as "a back portion *13*" and "the back portion *13*." This portion of claim 2 should therefore be construed as if the word "closed" appeared just before the expression "closed fabric back portion," in lines 34, 35 Permutit Co. v. Wadham (C. C. A.) 13 F. (2d) 454, 458. But there is nothing ambiguous in the phrase "a series of independent fastening elements," twice used in the claim, and we are not therefore authorized to narrow it and save it from anticipation or the prior art by referring to the specifications (in this case ambiguous) and drawings. McCarty v. Lehigh Valley R. Co., 160 U. S. 110, 116, 16 S. Ct. 240, 40 L. Ed. 358; Duncan v. Cincinnati Butchers' Supply Co., 171 F. 656, 663 (C. C. A. 6); Harvey Hubbell, Inc., v. General Elec. Co., 267 F. 570 (C. C. A. 2); Permutit Co. v. Wadham, supra. See, also, Robins Convey. Belt Co. v. Amer. Rd. Mach. Co., 145 F. 923, 926 (C. C. A. 3).

The trend from the rigid form-reducing "hour-glass" variety of corset toward the flexible form-fitting girdle began as early as 1916. It is beyond doubt that girdles in varying forms were made and sold for use in this country upon special orders by different corset manufacturers long prior to July, 1920, the date of Mayer's alleged invention, and before that date girdles and girdle brassieres were on the general market and being worn. The common characteristic of these girdles was the elastic side panels, varying in width and inserted between and joined to the fabric portions, and designed to fall over the hips. Their purpose was to hold the girdle snugly to the wearer and at the same time provide flexibility for freedom of movement. The earlier forms had three openings, one at the back and one on each side of the front. However, the tendency of later models was toward only one opening, and that located relative to the waist of the wearer, either in front, at the back, or at one side. To close and secure the girdle, various fastening means were used, to wit, laces in both front and back openings, as in Siegel, No. 1,430,121, patented September 26, 1922, clasps or busks in front, buttons at the side and on each side of the front, when there were two openings, and hooks and eyes at the back, at the side, and in a modified form at the front. However, there is in evidence only one model prior to Mayer wherein elastic was located on adjacent edges of the opening, to wit, the garment made by Mme. Campbell in 1917 for Mrs. Bampfield.

The above briefly sets forth the state of the art at the date of Mayer's alleged invention with the knowledge of which he was chargeable. Mast Foos & Co. v. Stover Mfg. Co., 177 U. S. 485, 493, 20 S. Ct. 708, 44 L. Ed. 856; Stearns & Co. v. Russell, 85

---

and having co-operating fastening means along its adjacent edges for securing the girdle about the figure.

"2. A closed front girdle constructed and arranged to encircle the figure in the region of the hips comprising, in combination, a closed fabric front portion and a fabric back portion for covering, respectively, the abdominal and back portions of the figure, and elastic webbing hip-covering portions extending from the top to the bottom of the girdle at the sides and constructed and arranged to conform to the contour of the hips; said girdle constructed and arranged to open at the side; the elastic webbing at that side being provided at its securing edge with a series of independent fastening elements; the other edge of the open side being provided with a series of independent fastening elements; the elements in each series directly co-operating with the elements in the other series to secure the girdle about the figure, thereby preserving the flexibility of the girdle at that side."

F. 218, 227 (C. C. A. 6); Crompton v. Knowles, 7 F: 199, 203 (C. C.).

As to claim 1: Mayer took a girdle with a closed fabric front and back and elastic sides, and split one of the elastics longitudinally for an opening, and for closing and fastening provided co-operating means along the adjacent edges.

As to claim 2: He took the same character of girdle and modified it, so that one side, at least, of the opening was of elastic, upon which for closing and preserving the flexibility of the girdle he provided a series of independent fastening elements to co-operate with a similar series on the other side.

The closed front and back girdle, with elastic sides located over and conforming to the hip, was old in the art; the opening at the side was old; independent fastening elements, such as buttons, clasps, and hooks and eyes, were old. Mayer does not claim to have provided any new fastening means, or to have used them in any new way. Even attaching the fasteners to the elastic had been done by the Campbell establishment in the Bampfield garment in 1917. The only distinct improvement claimed by him is that of continuous smoothness of the garment and its imperceptibility through thin clothing, which necessarily falls, by reason of the denial of limitations upon claim 2, as above indicated.

■ We do not conceive that we are required to determine whether the Mayer patent in all its elements is found in some prior form so as to anticipate it. The primary question here is one of invention. This is, of course, a question of fact, taking into consideration the entire field of the prior art. Ohmer Fare Register Co. v. Ohmer, 238 F. 182, 187 (C. C. A. 6); Ferro Concrete Constr. Co. v. Concrete-Steel Co., 206 F. 666, 668 (C. C. A. 6); Edwards v. Dayton Mfg. Co., 257 F. 980, 983 (C. C. A. 6); Keene v. New Idea Spreader Co., 231 F. 701, 705 (C. C. A. 6). The utmost that can be said for Mayer is that he used an old combination in a new way, and probably produced a somewhat more perfect or better girdle. If he made any improvement, it was in degree only. Ansonia Brass & Copper Co. v. Elec. Supply Co., 144 U. S. 11–19, 12 S. Ct. 601, 36 L. Ed. 327; Edwards v. Dayton Mfg. Co., supra; Keene v. New Idea Spreader Co., supra. This may or may not have been an invention. It was not necessarily so. Pearce v. Mulford, 102 U. S. 112, 118, 26 L. Ed. 93; Hollister v. Benedict & Burnham Mfg. Co., 113 U. S. 59, 73, 5 S. Ct. 717, 28 L. Ed. 901; Grant v. Walter, 148 U.

S. 547, 553, 13 S. Ct. 699, 37 L. Ed. 552; Western Willite Co. v. Trinidad Asphalt Mfg. Co., 16 F.(2d) 446, 450 (C. C. A. 8). See, also, Hug v. Lakewood Engineering Co., 7 F.(2d) 98, 99 (C. C. A. 6).

We do not find in Mayer's work the creation of the inventive faculty. Working upon what had gone before, he made a slight change only in form and design. This was accomplished by the application of his knowledge, skill, and experience, was one only of many succesive steps in the evolution from the form-restricting corset to the form-conforming girdle or girdle brassiere, and was no more than might have been expected of any well-trained and intelligent corsetier or corsetiere. Busell Trimmer Co. v. Stevens, 137 U. S. 423, 435, 11 S. Ct. 150, 34 L. Ed. 719; Packing Co. Cases, 105 U. S. 566, 576, 26 L. Ed. 1172; Railroad Supply Co. v. Elyria I. & S. Co., 244 U. S. 285, 292, 37 S. Ct. 502, 61 L. Ed. 1136; Marvel Equip. Co. v. Merit Oil Equip. Co., 29 F.(2d) 313 (C. C. A. 6); Edwards v. Dayton Mfg. Co., supra; Grant v. Walter, supra; Hollister v. Benedict & Burnham Mfg. Co., supra; Pearce v. Mulford, supra.

We conclude that claims 1 and 2 in suit are invalid for the reasons indicated, and the fact that the garment was more or less a commercial success is of no avail. Keene v. New Idea Spreader Co., supra.

Affirmed.