## BETTENDORF CO. v. OHIO STEEL FOUNDRY CO.

### No. 5808.

Circuit Court of Appeals, Sixth Circuit.

March 11, 1932.

George Haight, of Chicago, Ill. (M. K. Hobbs and Ward Ross, both of Chicago, Ill., on the brief), for appellant.

C. W. Owen, of Toledo, Ohio (Owen & Owen, of Toledo, Ohio, on the brief), for appellee.

Before MOORMAN, HICKS, and HICKENLOOPER, Circuit Judges.

HICKENLOOPER, Circuit Judge.

Complainant in the court below appeals from a decree dismissing its bill for infringement of patent No. 1,351,326, issued August 31, 1920, upon application of Claus J. Werner Clasen, for a "railway side frame" as used in the construction of freight car trucks of the four-wheel type. While all claims of the patent are in suit, claim 6 is typical, and is quoted in the margin.[1] If the patent be valid, infringement is conceded, so that the only question is that of validity. The District Court found the claims invalid.

In the truck of a railway freight car, the weight of the body of the car rests upon a bolster extending from the side frame upon one side to that upon the other, springs being usually interposed between the lower surface of the bolster and the bolster spring seats provided in the side frames. The two pairs of wheels are mounted upon axles which extend from journal boxes at or near the ends of the side frame on one side to similar journal boxes on the other side. These side frames had long been made of cast steel, and, to combine strength of construction with lightness and economy, integral columns had been provided at the sides of the bolster opening, and substantially triangular openings had been left between these columns and the journal boxes. Thus a side frame of truss construction was produced which had an upper and a lower chord, joining at or near the journal boxes, with vertical columns spaced to provide the bolster opening. This was all old at the time of application for the Clasen patent in suit. It was also old to construct such side frames of flat plates with the edges heavily reinforced (sometimes referred to as of I cross-section), of T cross-section, or of the U-shaped members of the Clasen patent. See patent to Johnson, No. 1,084,218, issued January 13, 1914, for a peculiarly clear disclosure of the U cross-section members.

The feature of integral journal boxes must be specially noticed. On October 6, 1903, patent No. 740,617 issued to William

[1] 6. An integral metallic side frame for car trucks comprising columns, a top member, a lower member, and a journal box at each end of said lower member, said column, top, and bottom members all being of U-section, said column members being spaced to form a bolster opening, the free edges of the U-shaped members bounding, on each side of the central bolster opening, an opening of substantially triangular shape, said top member extending above the tops of said journal boxes.

P. Bettendorf for "a metal side frame for car trucks having journal-boxes made integral thereof and a bolster-opening therein mediate said boxes." This patent was respected by the car-building industry, with the result that prior to October 6, 1920, the complainant was regarded as having a complete monopoly in the manufacture of all side frames with integral journal boxes, whatever detail of construction was otherwise adopted. Thus, while the art prior to the filing of application for the patent in suit shows side frames of this truss type in which the members were of U cross-section, and others in which the upper member extended above the journal boxes, another of the elements of the claims in suit, the structures having one or both of these features did not have the integrally formed journal boxes which were protected by the Bettendorf patent. See patent to Hart, No. 1,026,744 (1912); patent to Young, No. 1,071,127 (1913); patent to Pulliam et al., No. 1,117,518 (1914); and others. Likewise, in 1917 and 1918, when the American Railway Association President's Committee, the Railroad Subcommittee, and the Subcommittee of Car Builders were completing their work of standardizing the design of the side frame, the U or channel shaped frame was definitely specified, but, in deference to the Bettendorf patent, it was left optional with the car builder to make the journal boxes integral with the other members of the frame, or detachable. It was then, and apparently as a result of the action of these committees, that Clasen first had the concept of his side frame of U-shaped members, but with integral journal boxes.

We see nothing of marked novelty on Clasen's part in this concept. It was clearly suggested by the prior art. In Hart, and Pulliam, and Young, the journal boxes were functionally integral and the top member of the truss extended above them. The A. R. A. Committee required the use of the U-shaped members and left optional the integral journal boxes. In view of all this, nothing more than the mechanical skill reasonably to be expected in the art was required to design a side frame having all the elements of the claim in suit, unless such claims are to be construed as including something more than a side frame of the ordinary truss type (1) having integral journal boxes, (2) with the top member extending above the tops of the journal boxes, and (3) in which the truss members were of U cross-section. It would require no exercise of the inventive faculty merely to combine these desirable and well-known elements of the prior art structures—especially under the stimulus of newly adopted standardization requirements. To cite but a few of the great mass of authorities supporting this conclusion, see: Railroad Supply Co. v. Elyria I. & S. Co., 244 U. S. 285, 37 S. Ct. 502, 61 L. Ed. 1136; Concrete Appliances Co. v. Gomery, 269 U. S. 177, 46 S. Ct. 42, 70 L. Ed. 222; Ohmer Fare Register Co. v. Ohmer, 238 F. 182 (C. C. A. 6); Huebner-Toledo Breweries Co. v. Mathews Gravity Carrier Co., 253 F. 435 (C. C. A. 6); Excelsior Steel Furnace Co. v. Williamson Heater Co., 286 F. 131 (C. C. A. 6); Condit v. Jackson Corset Co., 35 F.(2d) 4 (C. C. A. 6); Adams v. Galion Iron Works & Mfg. Co., 42 F.(2d) 395 (C. C. A. 6).

This difficulty is recognized by counsel for complainant, and it is sought to avoid invalidity of the patent by insistence that the true invention lies, not in the mere combination of old elements, each performing its function in its accustomed way, but in the point where, and in the manner in which, the central web of the lower U-shaped member joins or merges with the integral journal boxes. Thus it is claimed that the provision of the specification, "The top member 1 extends somewhat beyond the points of junction between itself and the bottom member 2, and *in the angle thus formed* I provide journal boxes, such as 12, which are integral with members 1 and 2, *the central webs of chords 2 merging into the side walls of the boxes* as illustrated in Fig. 4," and the element of the claims, "a journal box *at each end* of said *lower* member" (emphasis ours), sufficiently disclose and claim a truss structure in which the lower chord merges into the side wall of the journal box at or just below its upper inner corner; the upper chord forming a box-like structure over the journal box. It is urged that, where the lower member merges with the journal boxes at a lower point, two additional struts are created adjoining such boxes, thus modifying the truss construction of the side plate; that, where the upper and lower members join before reaching the journal boxes, a cantilever structure is produced at each end of the side plate which greatly weakens it; and that Clasen was the first to produce a side plate of true truss construction, having the advantages of strength, lightness, and economy, and avoiding the destructive cantilever action at the journal boxes; and that the patentee should be protected in his invention.

We accept without question the numerous authorities cited to the effect that a pat-

ent is presumptively valid; that it should be liberally construed to preserve, and not destroy, the patentee's monopoly in the advance which he has made in the art; that we should not be blinded by the simplicity of the device; that it is immaterial that all the elements of the combination were old, if in fact there has been an improvement in structure and result; and the like. But, after all is said and done, there still remains the question of fact whether the patent discloses an exercise of the inventive faculty, in view of the state of the art, or merely mechanical skill; and the question of law, whether the claims properly protect the patentee in the invention which he has really made.

Upon the question of fact presented by complainant's contention, it seems to us sufficient answer that the location of the journal boxes "in the angle formed" by the junction of the upper and lower chords, and the merging of the lower chord with the side wall of the journal box a short distance below its upper inner corner, was well known to the art prior to the application for the patent in suit. See patents to Hart, Pulliam, and Young, supra. If an exercise of the inventive faculty is not required to utilize truss members of U cross-section and integral journal boxes in the construction of the prior art side frames, the existence of invention is not disclosed by location of the journal boxes in the angle of junction of the upper and lower chords or "at each end of said lower member," for the choice of this location is but the selection by the complainant of another of the desirable features of the devices of the prior art.

Upon the question of law presented, we are also of the opinion that the claims fail to adequately cover this element of relative location of the upper and lower chords and the journal boxes. In several recent cases we have quite definitely pointed out that Rev. St. § 4888 (35 USCA § 33) requires, not only that the invention be described in such full, clear, concise, and exact terms as to enable any person skilled in the art or science to which it appertains to make, construct, and use the same, but also that the patentee shall have particularly pointed out and distinctly claimed the part, improvement, or combination which he claims as his invention. Farrington v. Haywood (C. C. A.) 35 F.(2d) 628; Sun Ray Gas Corp. v. Bellows-Claude Neon Co. (C. C. A.) 49 F.(2d) 886; Directoplate Corp. v. Donaldson Lithographing Co. (C. C. A.) 51 F.(2d) 199, 202. In the last of the cases cited it is said that "intent and

the inventor's own appraisal of the nature of his invention are of great importance." We find nothing in the Patent Office record indicating an intent to claim the feature now under consideration. Whether or not relief could have been obtained by reissue we need not consider. So, also, in The Permutit Co. v. Graver Corp., 284 U. S. 52, 60, 52 S. Ct. 53, 55, 76 L. Ed. —, it is said that the statute requires this precision, not only to insure enjoyment of the invention after expiration of the patent, "but also to inform the public during the life of the patent of the limits of the monopoly asserted, so that it may be known which features may be safely used or manufactured without a license and which may not." Clearly, if the claims as stated fail to disclose a patentable invention, no license is required, the device may be made and used by any one. Thus the present case falls squarely within the principle of this decision of the Supreme Court. There is no ambiguity in the claims. They seemingly cover all structures in which the journal boxes are located "at the end" of the lower member. This would cover those structures in which the lower chord merges with the journal box at its lower inner corner as well as those in which the two chords join at the upper inner corner, thus resulting in a cantilever construction, and all that lie between. The claims as drafted measure the invention, and, in the absence of ambiguity, the court is not justified in reading into them an element which they do not already contain. Considering only the elements specified as in combination, and as descriptive of the article patented, and interpreting the claims according to their obvious meaning, we are constrained to hold, as we have already stated, that they are invalid for want of invention.

Affirmed.