## NEWCOMB, DAVID CO., Inc., v. R. C. MAHON CO.

### No. 5984.

Circuit Court of Appeals, Sixth Circuit.

June 27, 1932.

R. S. Binns, of Detroit, Mich. (Barthel, Flanders & Barthel and Otto F. Barthel, all of Detroit, Mich., on the brief), for appellant.

S. C. Barnes, of Detroit, Mich. (Arthur Raisch, and Barnes & Kisselle, all of Detroit, Mich., on the brief), for appellee.

Before MOORMAN, HICKS, and HICKENLOOPER, Circuit Judges.

HICKENLOOPER, Circuit Judge.

The District Court held claims 11 and 12 of patent to Russell C. Mahon, No. 1,641,181, for a pneumatic conveyor, to be valid and to have been infringed by appellant. It will be sufficient to quote but one of these claims.[1] This appeal followed.

[1] "11. In a pneumatic conveyor, a conveyor conduit, an exhaust fan housing connected to the discharge end of the conveyor conduit and having a discharge opening, an exhaust fan in the housing adapted to withdraw material from the conveyor conduit and discharge it through the discharge opening, the said conveyor conduit having a series of angular depressions in the bottom, each depression being provided with an opening to atmosphere, each opening being provided in the portion of the depression at the greatest distance from the exhaust fan."

At the time of the application for the patent in suit, pneumatic conveyors for sawdust and shavings, and even heavier materials, were already old in the art. When used in connection with the operation of a number of separate machines in a woodworking plant, it was necessary that the conveyor have a series of branch conduits to receive the sawdust and shavings at the several machines, and to discharge them into the main conveyor conduit through which it was designed they should be carried to a dump or furnace. It would seem that it must then have been obvious to the pneumatic or hydraulic engineer that the suction necessary to convey the material through the branch conduits to the main conduit could be produced only by an exhaust fan (see patent to Allington, No. 893,-968), the other alternative being to deliver such material to the main conduit by gravity (see patents to Dodge, Reissue No. 11,549 [1896], and to McKone, No. 713,787 [1902]). It was also then known that, after the material had been deposited in the main conduit, whether by suction or gravity, it could be moved along and within such conduit only by the speed of the air column, as in the patent to Allington, or by providing diagonal openings in the base of the conduit, sloped in the direction of travel, through which inrushing jets of air passed and "kicked" the heavier material progressively from point to point, as in patents to Dodge and McKone. In fact, McKone, depositing his material in the main conduit by gravity, used both of these means, a strong blast of air through the main conduit and also the diagonal base openings, to the end that the lighter particles were carried by the blast of air and the heavier ones were prevented from settling in the conduit by reason of the air jets entering the base.

It was also well known at the time of the application for the patent in suit that speed of the main air column, sufficient to move the heavier particles, could be maintained only if and when the volume of the air admitted by the intake openings, or sum of intake openings, closely approximated the volume of the exhaust. Since speed of motion of a dense air column, and not a partial vacuum, was one means used to move material after it had reached the main conduit, it seems to us to be as obvious in the pneumatic art, as it would be in the hydraulic art, where this means is utilized, that the balance between intake and exhaust must be preserved in order that speed may be maintained. Allington

accomplished this result by tapering the main conduit so that, even at points distant from the exhaust fan, the relationship between the diameter of the conduit (viz., volume of exhaust) and the volume of the intake was preserved.

Mahon conceived the idea that there might be installation economy in an avoidance of the tapering conduits of Allington. This necessarily required the utilization of some means, other than speed of motion of the air column, for propelling the material along the main conduit after it had been carried there by the branch conduits, at points so far distant from the exhaust fan that the speed of the air column was insufficient for this purpose. To accomplish this result Mahon resorted to the diagonally arranged air intakes of Dodge and McKone. He also conceived that there might be occasion, nearer the fan, to remove a temporary obstruction or accumulation of material by the use of similar intake openings in the base, and he accordingly provided such openings along the entire base of his main conduit; but, since the inflowing jets of air at the base of the conduit were not ordinarily necessary near the fan, where the speed of the main air column was already high, and because the speed of such air column would be retarded by provision of additional openings after the volume of the sum of the intake had approximated the volume of the exhaust, Mahon provided each of his base openings with a valve, thus permitting any desired number to be cut out of service.

In the defendant's device the base openings are provided only at those portions of the main conduit where the branch conduits are insufficient in number and size to produce the desired speed of motion of the main air column, and where it is therefore necessary to provide the mechanical rolling or "kicking" effect of air jets. To emphasize this feature, the defendant also provides a blast fan and a separate blast conduit beneath the main or exhaust conduit. Thus in defendant's device the intake or branch conduits are operated solely by the exhaust fan, while the force of the jets of air rushing through the base openings may be, though it necessarily need not be, supplemented by the blast fan. Where the volume of the air admitted through the combined base openings and branch conduits sufficiently approaches the volume of the exhaust to maintain both suction in the branch conduits and speed of the main air column, the base openings and the blast

trough are discontinued. The main conduit is, however, uniform in diameter throughout its length.

It is elementary that invention may reside in a combination of elements all of which were theretofore separately old in the art, but, in order to sustain such a combination, it is equally clear that the inventor must have done more than make a judicious selection from the devices of the prior art, each designed and utilized to accomplish its individual purpose at a time and in a place where such function is necessary for the operation of the whole. This is but the exercise of the mechanical ability reasonably to be expected in the development of the art, and has repeatedly been held insufficient to evidence invention, whether such decision be placed upon the ground of aggregation or upon the lack of an exercise of the inventive faculty. Concrete Appliances Co. v. Gomery, 269 U. S. 177, 46 S. Ct. 42, 70 L. Ed. 222; Reynolds Spring Co. v. L. A. Young Industries, Inc., 36 F.(2d) 150 (C. C. A. 6); Adams v. Galion Iron Works, 42 F.(2d) 395 (C. C. A. 6); Beck-Frost Corp. v. Ford Motor Co., 44 F.(2d) 519 (C. C. A. 6); Bettendorf Co. v. Ohio Steel Foundry Co., 56 F.(2d) 777 (C. C. A. 6). And compare Sachs v. Hartford Electric Supply Co., 47 F.(2d) 743, 748 (C. C. A. 2), where Judge Learned Hand criticizes the promiscuous use of the term "aggregation," and says that in every case "inventions depend upon whether more was required to fill the need than the routine ingenuity of the ordinary craftsman." We think that this statement perhaps requires too little, but certain it is that something more is required than even a highly skillful selection of well-known means from the prior art to progressively perform their several functions.

In the present case we can see nothing more in the alleged invention of Mahon than the use of the base openings of Dodge and McKone at those locations where such openings are necessary to accomplish the desired movement of material in the main conveyor conduit, and the abandonment of such means of conveyance where the attained speed of the main air column makes use of this supplemental means unnecessary or even a fault. Doubtless the conveyor design of Mahon, certainly as embodied in the commercial practices of the complainant, has met with favorable reception and has gone into broad use. Doubtless, also, it is a more serviceable conveyor than had theretofore been placed upon the market; but we fail to find in its underlying concept that spark of inventive genius which alone can distinguish it from an exercise of mechanical ability reasonably to be expected from the pneumatic engineer, and which alone would justify a patent.

The decree of the District Court is reversed, and the cause is remanded with instructions to dismiss the bill.