## CENTRAL BRASS MFG. CO. v. REPUBLIC BRASS CO.

## REPUBLIC BRASS CO. v. CENTRAL BRASS MFG. CO.

### Nos. 6077, 6078.

Circuit Court of Appeals, Sixth Circuit.

Feb. 17, 1933.

Harry Frease, of Canton, Ohio, for Central Brass Co.

A. J. Hudson, of Cleveland, Ohio (Kwis, Hudson & Kent, of Cleveland, Ohio, on the brief), for Republic Brass Co.

Before MOORMAN, HICKS, and SIMONS, Circuit Judges.

HICKS, Circuit Judge.

Suit by the Republic Brass Company, appellee and cross-appellant, against the Central Brass Manufacturing Company, appellant and cross-appellee, for infringement of reissued letters patent No. 17,034, July 17, 1928, to Leon Bloch for a "Four-Way Diverter Valve." Claims 1 and 2 only are involved.

The District Court held the patent valid and infringed. The Central Company appealed. The Republic Company also appealed from a decree of the District Court upon rehearing wherein the court held that certain diverter valves known as cross-appellant's Exhibits DD and EE did not infringe. The defenses were: (1) Anticipation; (2) lack of invention; (3) noninfringement; (4) intervening rights; and (5) that the claims of the reissue patent were not verified and that the invention alleged was not the same recognized in the original patent.

We think it necessary to consider the question of invention only.

The invention relates to a valve used in connection with the modern bathtub and connecting shower. In the older type of bathtub fixtures the hot and cold water pipes came up through the floor on the inside of the room and usually connected with valves mounted at one end of the tub. Where a separate shower was used the piping likewise came up inside the room. There have been many successive steps in the evolution of this phase of the plumbing art. The newer type tub with its connecting shower is fitted in a corner of the room and the pipes running to tub and shower are placed in the narrow space behind the wall, and they must clear the wall to prevent dampness and consequent distintegration of the plastering.

The reissue patent relates to a valve used in connection with such modern tub and shower. Bloch's problem was to provide a valve of simple and economical construction which could be used in connection with inlet hot and cold water valves to mix the water and deliver it at any desired temperature to either the tub or the shower and which also could be installed in the very narrow spaces between the walls in modern buildings.

Claim 1 may be analyzed as follows: A valve combining (1) a casing having two inlet and two outlet openings disposed in the same plane; (2) said outlet openings being disposed on opposite sides of the casing; (3) two spaced interior partitions in the casing defining a diverter chamber separated from the outlet openings but in communication with the inlet openings; (4) the partitions having aligned ports therein; (5) angular passages in the casing extending from the aligned ports to the outlet openings, respectively; (6) a hollow sleeve disposed in the casing and having a lateral port establishing communication between one of the angular passages and the diverter chamber; and (7) a valve disposed between the aligned ports and movable into a position closing either port to divert the flow of liquid through the other.

It is unnecessary to give specific consideration to claim 2.

The new and useful results claimed by Bloch are the use of less piping and two less valves, with a saving in the cost of labor and material; the elimination of the inconvenience and discomfort sometimes arising from the manipulation of separate hot and cold water handles and the advantage in installing this device within narrow wall spaces.

The elements of the claim are old. They are found, some of them in one and some in others, in Booth, No. 324,293, 1885; Bunting, No. 459,506, 1891; Braun, No. 1,442,-782, 1923; and the Standard Sanitary valve, 1901, which was produced at the hearing and the existence of which we think was sufficiently established. We think the nearest approach to anticipation is the Lehnert patent, No. 1,228,453, June 5, 1917, for a "bathroom fixture." Each of the elements of Bloch is found in Lehnert except (1) the spaced interior partitions having aligned ports; (2) the angular passages; and (3) the hollow sleeve disposed in the casing and having a lateral port.

Notwithstanding the structural difference between Bloch and Lehnert, the admitted fact is that their functions are substantially the same. Bloch was asked the following questions and made the following answers:

"Q. Well, isn't that a diverter valve? A. That is a diverter valve.

"Q. What functions are there in your valve that are not accomplished by such a structure as the Lehnert valve? A. Lehnert valve—

"Q. I am speaking of function. A. The functions would be very similar.

"Q. Aren't they identical? A. No, sir, not identical.

"Q. Where are they not identical? A. They are not identical in the seating of the stem, an entirely different proposition in seating.

"Q. That is the structure. I mean function. A. Well, function, as I said before, it would be very similar.

"Q. Practically the same? A. Very similar.

"Q. In other words, he has hot and cold water inlets? A. That is right.

"Q. And lets the water come in between two other ports oppositely disposed? A. That is correct.

"Q. With a reciprocating valve between them, and by alternately closing one or the other, he diverts the water from one to the other? A. Yes, sir.

"Q. Mixing it right at the valve? A. Yes, sir."

Spaced interior partitions with aligned ports, angular passages, and hollow sleeves having lateral ports communicating therewith are all admittedly very old in valves relating to the plumbing art. Bloch was chargeable with knowledge thereof, and we think that the introduction of these elements into his combination was an obvious one. Acting upon his knowledge, skill, and experience, he simply took another step in the evolution of the bathtub and shower art. He produced a cheaper, more compact, and perhaps a more convenient valve; but we do not think that his achievement was the result of the exercise of the inventive faculty. See Adrian Wire Fence Co. v. United Fence Co., 223 F. 342, 345 (C. C. A. 6); Edwards v. Dayton Mfg. Co., 257 F. 980, 984 (C. C. A. 6); Keene v. New Idea Spreader Co., 231 F. 701, 705 (C. C. A. 6); Condit v. Jackson Corset Co., 35 F.(2d) 4, 6 (C. C. A. 6); Central Brass Mfg. Co. v. Republic Brass Co., 35 F. (2d) 728 (C. C. A. 6); Marvel Equip. Co. v. Merit Oil Equip. Co., 29 F.(2d) 313 (C. C. A. 6); Kodel Co. v. Clock Co. ( C. C. A.) 62 F.(2d) 692, decided January 16, 1933; Bassick Mfg. Co. v. Adams Grease Gun Corp., 52 F.(2d) 36, 38 (C. C. A. 2). In Newcomb, David Co., Inc., v. R. C. Mahon Co., 59 F.(2d) 899, 901, this court said: "It is elementary that invention may reside in a combination of elements all of which were theretofore separately old in the art, but, in order to sustain such a combination, it is equally clear that the inventor must have done more than make a judicious selection from the devices of the prior art, each designed and utilized to accomplish its individual purpose at a time and in a place where such function is necessary for the operation of the whole. This is but the exercise of the mechanical ability reasonably to be expected in the development of the art, and has repeatedly been held insufficient to evidence invention, whether such decision be placed upon the ground of aggregation or upon the lack of an exercise of the inventive faculty."

The decree of the District Court is reversed, and the case is remanded, with instructions to dismiss the bill.