## LOEBER HAIR GOODS CO. v. H. W. GOSSARD CO.

### No. 6992.

Circuit Court of Appeals, Sixth Circuit.

June 30, 1936.

Rehearing Denied Dec. 16, 1936.

Samuel E. Darby, Jr., of New York City (Kwis, Hudson & Kent and Bernsteen & Bernsteen, all of Cleveland, Ohio, and Floyd H. Crews, of New York City, on the brief), for appellant.

Hugh M. Morris, of Wilmington, Del. (Bates, Golrick & Teare, of Cleveland, Ohio, Hugh M. Morris, of Wilmington, Del., and Lawrence K. Sager and Donald Malcolm, both of New York City, on the brief), for appellee.

Before MOORMAN, HICKS, and SIMONS, Circuit Judges.

HICKS, Circuit Judge.

Suit by the H. W. Gossard Company, appellee, against Loeber Hair Goods Company, appellant, for infringement of letters patent No. 1,859,198, May 17, 1932, to K. E. Cunningham for a "Combination Garment" and assigned to appellee. Claims 3 and 4 only are involved. The District Court sustained the claims. If they are valid, infringement is admitted.

The patent relates to a garment for women, and the specification sets forth that "a particular object of this invention is to provide a garment adapted to correctly confine and mold the busts and the abdomen with complete comfort to the wearer and to fit closely above and below the busts without appreciable pressure thereon."

To achieve this object the patentee provided a corset and a brassiere. There is nothing unusual about the corset. Its chief features are an inelastic front section, an inelastic back section, and elastic side panels. The corset is fastened around the body by means of hooks and eyes at the line of junction between one of the panels and the back section. The brassiere includes a front section and two end sections of soft material. The front section of the brassiere is adapted to cover the body across the bust and is sewn to the upper part of the inelastic front section of the corset. The end sections of the brassiere adjacent to its front portion are sewn to it and being broader extend down along the vertical edges of the front section of the corset to a point below the diaphragm at about the waist line of the wearer and are sewn to the corset at the line of junction between these edges and the elastic side panels. Each end section of the brassiere terminates in a pair of elastic straps which converge to unite with a tab pierced with a button hole. These end sections extend rearwardly over and beyond the upper portion of the side panels of the corset and the elastic straps cross each other at the rear fastening by means of the button holes in the tabs to buttons affixed to the back section of the corset somewhat below its top and on each side of its center. The brassiere is supported by shoulder straps, preferably elastic, which are attached to the front portion and to the end sections.

The theory of the patent is that the elastic straps of each pair so diverge from the button to which they are fastened by the tab that the lower strap of each pair exerts a pull along the lower edge of its adjacent end section and across the portion of the corset covering the diaphragm and that the upper strap of each pair exerts a pull along the upper edge of its adjacent end section and across the upper part of the front portion of the brassiere which covers the body above the bust. Appellee claims that the object of the patent is thus accomplished. Claim 4, with the exception of its concluding statement as to its functions, is otherwise substantially similar to claim 3, and is printed in the margin.[1]

It is conceded that the claims in all their elements are not completely anticipated in the prior art. The question is therefore purely one of invention, and a consideration of what had gone before is highly important (Ohmer Fare Reg. Co. v. Ohmer, 238 F. 182, 186 [C.C.A.6]), since Miss Cunningham was working in a crowded field [Condit v. Jackson Corset Co., 35 F.(2d) 4 (C.C.A.6)] and is presumed to know all patented devices and prior public uses disclosed in the art. Adams v. Galion Iron Works & Mfg. Co., 42 F.(2d) 395, 397 (C.C.A.6).

Appellant introduced a French garment, Exhibit D, which the court found "beyond any reasonable doubt" to have been imported in June, 1930, and we think the evidence ample to support the finding. Gerome S. Dumont, an importer of hand-loom elastics, under the name of the French-American Elastic Company, and having the exclusive agency in the United States for J. Boss & Co., corset manufacturers, of Paris, testified that Exhibit D was imported on the steamer Paris, which left Havre on June 3, 1930. His testimony as to the receipt of Exhibit D was supported by complete documentary evidence. He further testified that he received no corsets from France after June, 1930, except one which he ordered in 1932, at the request of Isador Roth, in an attempt to get a duplicate of Exhibit D. He also produced documentary evidence as to the date of the importation of the second garment.

---

[1] "4. A combination garment comprising a corset and a brassiere, said brassiere comprising a front portion adapted to cover the body across the busts and being sewn to the upper edge of the corset, end sections terminating in pairs of elastic straps, said end sections being sewn to said front portion and down the side of the corset to about the waistline and adapted to be crossed at the back, shoulder straps attached to the front portion and the end sections, and means for fastening said pairs of elastic straps to the back of the corset, said straps in each pair diverging from the point adapted to be fastened to the corset. * * *"

Roth corroborated Dumont, testifying that Dumont delivered Exhibit D to him on June 25, 1930, in the office of appellee in New York; that it was forwarded to his place of business in Chicago; that he kept it in his designing room from six to eight weeks and used it in designing a garment upon which he applied for a patent on September 25, 1931. This French garment is a combination corset and brassiere. The corset is all elastic except for a shield-shaped satin covered section in front. The brassiere is secured to the corset by three buttons at the top of the shield-shaped section. The front of the brassiere is of satin and lace and its end sections, differing from Cunningham, are narrower than the front section. To each of these end sections are fastened two converging elastic straps, terminating in a looped tab. The elastic straps overlap or cross each other and the tabs are fastened to buttons affixed to the corset below its top and on either side of its center line at the back. Two elastic shoulder straps support the brassiere.

In the prior art are two patents, issued to Waldemar Kops; letters patent No. 1,762,399, June 10, 1930, and No. 1,833,325, November 24, 1931. The first illustrates a garment in which a bandeau (or brassiere) is combined with a girdle or belt which includes "a front member adapted to overlie the diaphragm and abdomen to support and control the same." There was no overlapping of the end sections of the bandeau over the upper part of the girdle as in Cunningham, nor was there any crossing of elastic fastenings at the rear. The bandeau was secured by a simple, horizontal elastic strap across the back. The second Kops patent, however, consisted of a girdle with front, back, and side members "together with a brassiere consisting of front and side members which are upward continuations of the front and side members of the girdle" (i. e., the side members are sewn to the upper edge of the corset and down its sides), "and straps extending rearwardly from the side members of the brassiere and adapted to overlie the upper edge of the back member of the girdle to prevent the flesh of the wearer from overhanging the edges of the back member of the girdle." The edges of the inelastic straps extending rearwardly from the side members of the brassiere converged for fastening as did the elastic straps of Cunningham. They were fastened, however, to each other and were held down by a loop to the girdle, and did not, as in Cunningham, cross each other and fasten to oppositely placed buttons on the girdle (or corset).

Appellant also introduced photostatic copies of a page from the November, 1929, number of "The Corset and Underwear Review" and a page from the "Nemo-Flex Bulletin," another prior publication, illustrating the "Princette" garment manufactured by Kops Bros., Inc. This garment was not described, but, from the cuts, appears to consist of a girdle or corset with inelastic front and back pieces and two elastic side panels with a brassiere sewed on in front. The end pieces of the brassiere were wider than the front, as in Cunningham, the extra width being sewed to the girdle along and down its seams. Each end piece extended rearwardly and lapped the upper part of the corset along its sides. The upper (diagonal) and lower (horizontal) edges of the side pieces were convergent, terminating in tabs which buttoned separately to the upper part of the corset at the rear, but these tabs did not cross.

It thus appears that every element of the claims in suit is unmistakably found in the prior art, and especially in the second Kops patent, the French garment, and the "Princette" illustrations. Miss Cunningham was a skilled corset maker. Given the French garment, it was an obvious step to sew the brassiere to the upper part of the corset instead of buttoning it thereto and to sew its end sections down along the seam of the corset, all as in the second patent to Kops, or the "Princette" garment. To accomplish this was but the exercise of that mechanical skill to be expected of any intelligent corset maker. Busell Trimmer Co. v. Stevens, 137 U.S. 423, 435, 11 S.Ct. 150, 34 L.Ed. 719; Condit v. Jackson Corset Co., supra, 35 F.(2d) 4, 6; Newcomb, David Co., Inc., v. R. C. Mahon Co., 59 F.(2d) 899, 901 (C.C.A.6); Central Brass Mfg. Co. v. Republic Brass Co., 63 F.(2d) 287, 289 (C.C.A.6). Any improvement by the patentee was of degree only.

The decree is reversed.