**H. W. GOSSARD CO. v. LOEBER'S, Inc.**
**LOEBER'S HAIR GOODS CO. et al. v.**
**H. W. GOSSARD CO.**

No. 6995.

Circuit Court of Appeals, Seventh Circuit.

June 24, 1940.

Rehearing Denied Sept. 24, 1940.

Samuel E. Darby and Floyd H. Crews, both of New York City, and Lowell C. Noyes, of Chicago, Ill., for appellants.

Hugh M. Morris, of Wilmington, Del., Frederick Burnham, of Chicago, Ill., and Donald Malcolm, of New York City, for appellee.

Before SPARKS and TREANOR, Circuit Judges, and WOODWARD, District Judge.

SPARKS, Circuit Judge.

Appellee charged Loeber's, Inc., with infringement of two patents to Cunningham, numbered respectively 1,859,198 and 1,899,890. They are referred to hereafter as the first and second Cunningham patents.

Shortly thereafter appellants filed a suit in the same District Court to restrain appellee from prosecution of the first suit, or any other patent infringement suit based on the first Cunningham patent. These cases were consolidated for hearing, and the District Court held both patents valid and infringed. The same decree denied the relief sought in the second suit, and from that entire decree this appeal is prosecuted. Infringement is admitted if the claims are valid.

The first patent to Cunningham was issued May 17, 1932, on an application filed August 29, 1930. Claims 3 and 8, inclusive, of this patent are in issue, and claim 3 is typical.[1] This alleged invention relates to a combination garment comprising a corset and brassiere designed to confine and mold correctly the busts and abdomen of the wearer with complete comfort, and adapted to fit closely above and below the busts without exerting appreciable pressure thereon.

The garment comprises a corset of inelastic material, having longitudinal side elastic portions and garters. The corset opens at one side and is provided with hooks and eyes for fastening it about the wearer, and has a portion attached to extend above the diaphragm of the wearer intermediate the busts. A gusset is inserted at the top of the back of the corset to give added adjustment, the corset being boned if desired.

The brassiere comprises a front portion of inelastic soft material adapted to cover the body across the busts and is sewed to the upper edge of the corset. End sections or flaps are sewed to the front portion of the brassiere and down the sides of the corset to a point adapted to lie below the diaphragm and at about the waistline of the wearer. These flaps are extended rearwardly along the sides to overlie the

---

[1] "3. A combination garment comprising a corset and a brassiere, said brassiere comprising a front portion adapted to cover the body across the busts and being attached to the upper edge of the corset, end sections terminating in elastic straps, said end sections being sewn to said front portion and down the side of the corset to about the waistline and adapted to be crossed at the back, shoulder straps attached to the front portion and the end sections, and means for fastening said elastic straps to the back of the corset."

back of the wearer. Each flap has sewed thereto a pair of elastic straps which terminate in a tab provided with buttonholes adapted to be fastened to buttons on the back of the corset. Shoulder straps are attached to the front portion and to the upper sides of the flaps of the brassiere. It is preferred to use elastic material in the shoulder straps so that the garment when worn with the garters will be kept in position, yet permit freedom of movement to the wearer.

The flaps are adapted to be crossed at the back, and the elastic straps of each pair diverge from their tab so that one strap is adapted to exert a transverse pull on the lower part of its adjacent end section, and across that portion of the corset adapted to cover the diaphragm, while the other strap is adapted to exert a pull on the upper part of the adjacent end section and across the upper part of the front portion of the brassiere. The general construction and arrangement of the end sections is such that they exert a downward pull when they are fastened and placed under tension. As a result of this construction, it is said that the diaphragm of the wearer is held flat, and the brassiere above the busts is held snugly against the body of the wearer without exerting uncomfortable pressure on the busts. The end sections of the brassiere, being crossed at the back and fastened to the corset, tend to exert an upward pull on the front of the brassiere thereby giving the desired uplift form to the figure.

Patent No. 1,833,325 to Kops was not cited by the Examiner in the prosecution of the patents now before us. He disclosed a combination corset and brassiere. With few exceptions, presently to be mentioned, he disclosed every feature of both Cunningham patents. Kops had but one piece of elastic attached to the pointed or free end of one of the flaps. On the free end of this elastic was a button which engaged a buttonhole in the pointed end of the other flap. Each flap in Kops is in the form of a rectangular triangle, with the hypotenuse on the upper side. A separate flap is sewed to each end of the brassiere, and to its respective side of the corset.

The free ends of the Cunningham flaps are not pointed, but are of appreciable width, and each constitutes the base of a triangle of which the elastics, presently described, form the sides. Instead of running each flap to a point in the rear, a piece of elastic is attached to each free corner of each flap, and the two elastics on each flap extend rearwardly and diagonally in such manner as to converge, thus forming a triangle. Extending rearwardly from the point of convergence is a tab which is provided with a buttonhole.

It is obvious that the Kops construction differs from Cunningham only in the fact that the former makes his triangle of cloth, which is the flap itself, to which he attaches one strip of elastic which engages a button on the free end of the other flap, whereas Cunningham constructs her triangle with the elastics, and her tabs which are attached to the respective points of the triangles engage buttons which in turn are attached to the corset. These buttons prevent the flap from working upward, while in Kops the same result is obtained by threading the elastic through a loop which is attached to the corset.

We are unable to discover inventive genius in Cunningham over Kops. Whatever force is applied to the point of the triangle reacts upon the brassiere precisely the same in both. There may be a difference in the degree of force applied, but the principle involved is the same, for whatever force is applied to the apex of a triangle reacts upon all the area between the laterals of the triangle. Concededly the force might act in a different degree, depending upon whether the base was rigid or otherwise, but that difference does not manifest itself here, for in both disclosures the base of the triangle appears to be of the same constituency. In argument, appellee refers to what we designate as the base of the triangle, as a pole or stay. However, neither the claim nor the specification refers to it as a pole, and in both Kops and Cunningham it would seem to comprise multiple plies of the material used. Certainly in both Kops and Cunningham this base is not rigid, for it yields to the contour of the body both laterally and vertically when force is applied.

The District Court was of the opinion that there was a distinction between Kops and Cunningham, in that Kops had no purpose in his invention to apply any appreciable force in uplifting the abdomen or restraining the diaphragm, or even the portion of the body above the breasts. However, Cunningham does not claim any such purpose, for in the specification of both of her patents she states that her object is to provide a garment adapted to cor-

rectly confine and mold the busts and the abdomen with complete comfort to the wearer and to fit closely above and below the busts without exerting appreciable pressure thereon.

The District Court was further of the opinion that Cunningham distributed tension and pressure to the body of the wearer radially where most desired, and that Kops cannot produce, supply and distribute this tension and force as does Cunningham. With this conclusion we are unable to agree for, as we have pointed out, when force is applied to the free end of the triangle there is a reaction at all points between the laterals, no matter how far extended, unless and until they reach a solid and stationary base. This must be true, or the law of Newton in this respect must be held for naught.

■ We have no doubt that the Cunningham corsets are better than those of Kops both in design and efficiency. However, the difference in design and construction involves no new principle and accomplishes nothing more than skill in the art would readily discern. The elements involved are all old and produce no new result. It is quite true that Cunningham differs from Kops with respect to the placement of the buttons and the amount and the placement of the elastic, but we regard these as minor details, and while they produce a neater fit, and perhaps perform their functions better than the elements in Kops, yet nothing new is disclosed. A patent should not issue on any disclosure merely because it does an old thing in a different way. It must disclose something which is new in the art and which amounts to something more than the result of mere mechanical skill.

The disclosure of the second Cunningham patent further illustrates the objects of both patents and impresses us with the lack of inventive genius in each disclosure. It will be noted that in the first Cunningham patent, the center area of what we term the elastic triangle is open. Obviously this structure did not produce all the beneficial results desired by the patentee. It was found desirable to have a stronger pull on the center of the base of the triangle. Obviously, Cunningham desired a more direct pull horizontally of the body in order to make a snugger fit and greater sustaining power immediately below the busts. To accomplish this she attached a horizontal elastic strap to the center of the base of each triangle, and secured its outer end to the intermediate portions of the laterals of the triangle by transverse seams or piping. This necessarily made the center elastic shorter than the lateral elastics, but this fact alone is a mere preferential construction of the patentee. The figure accompanying the specifications discloses that the three elastic straps filled the entire area of the triangle, and this is the only new feature of the second patent. Hence, in effect, Cunningham by her second disclosure uses a triangle whose area is completely filled with elastic, while Kops completely fills it with non-elastic material and attaches his elastic to the point of the triangle.

There was also introduced in evidence what is referred to as the Princette garment, which we think clearly anticipates both of the Cunningham patents. It was on the market and well advertised as early as the year 1929, and it was not cited during the prosecution of the Cunningham applications. It has the end sections which are sewed down on the sides of the corset to the waistline, and converge in the back and terminate in elastics. Moreover, there is one elastic on each side; they diagonally cross; and each is buttoned to the back of the garment, as in Cunningham. We feel impelled to hold that whatever additional disclosure was made by Cunningham in either of her patents was merely the result of skill in the art.

■ We think that both of the Cunningham patents are invalid because of prior public knowledge. Other questions are raised which we need not do more than mention. The Circuit Court of Appeals for the Sixth Circuit held that the first patent of Cunningham was invalid because of anticipation, want of invention and prior public knowledge. Loeber Hair Goods Co. v. W. H. Gossard Co., 87 F.2d 98, decided before suit was filed in this case. That decision is based partly upon what is referred to in the record as the French garment. This was said to have been imported in 1930, and was in the possession of appellee at the time depositions were taken in the first case. It unquestionably exhibits everything disclosed by Cunningham. However, a sharp controversy arose in the case at bar over the credibility of the witnesses who gave the evidence with respect to the French garment. It so impressed the District Court in this case that he declined to believe their testimony, and

for this reason chose not to follow the decision of the Sixth Circuit. We accept his ruling in this respect. The character of the witnesses was obviously not known to appellee, and of course evidence relating to it was not introduced in the trial of the earlier case. For this reason we think the District Court in this case was warranted in exercising its own judgment with respect to this testimony. However, our conclusion is not based in any respect on the disclosures of this French garment. It is not fair to say that the decision of the Sixth Circuit in the earlier case was based entirely upon the French article. Their conclusion is that every element of the claims there in suit was unmistakably found in the prior art, and especially in the Kops patent, the French garment and the Princette illustrations. Our conclusion is the same, but it is based on the disclosures of the Kops patent and the Princette illustrations.

A further contention of appellants is that the decision of the Sixth Circuit is res. adjudicata with respect to the first Cunningham patent, and that the doctrine of Kessler v. Eldred, 206 U.S. 285, 27 S.Ct. 611, 51 L.Ed. 1065, precludes the prosecution of the present infringement suit on the first Cunningham patent. They further charge invalidity of both patents because of double patenting.

In view of the result we have reached, it is unnecessary for us to pass on these questions. The decree is reversed and the cause is remanded with instructions to dismiss appellee's bill of complaint for lack of equity.