### REYNOLDS SPRING CO. v. L. A. YOUNG INDUSTRIES, Inc.

### L. A. YOUNG INDUSTRIES, Inc., v. REYNOLDS SPRING CO.

Circuit Court of Appeals, Sixth Circuit. December 3, 1929.

Nos. 5215, 5216.

Otto F. Barthel, of Detroit, Mich., and Walter F. Murray, of Cincinnati, Ohio (Barthel, Flanders & Barthel, of Detroit, Mich., on the brief), for Reynolds Spring Co.

Otis A. Earl, of Kalamazoo, Mich., and Melville Church, of Washington, D. C. (Chappell & Earl, of Kalamazoo, Mich., on the brief), for Young Industries.

Before DENISON, MOORMAN, and HICKENLOOPER, Circuit Judges.

HICKENLOOPER, Circuit Judge. Three patents are involved in the present appeal and cross-appeal. Patent No. 1,058,285, issued to L. A. Young, April 8, 1913, covers the use of the S type of base frame, or marginal strip on the base frame, in spring upholstery constructions such as seats for automobiles. Claims 1, 2, 3, 5, and 7 are in suit and were held valid and infringed. Patent No. 1,428,701, issued to Otto A. Michelis, September 12, 1922, claims in combination with such spring structures a tie loop, having arms terminating in hooks with relatively short bills, the bight of one hook extending beyond the other to facilitate engagement in connecting the springs. Both claims of the patent are in suit and were held valid and infringed. Patent No. 1,439,891, issued to J. T. Holtfoth, December 26, 1922, so far as this action is concerned, covers telescoping the ends of the base frame, of S cross section such as is disclosed in the Young patent, so as to form an endless frame with continuous channels. Claims 2, 3, 6, 7, and 8 are in suit and were held not infringed.

After careful consideration and study we feel constrained to hold the claims in suit of both the Michelis and the Holtfoth patents invalid for want of invention, in that they but utilize well-known expedients in the more or less obvious solution of the problems confronting the patentees. Concrete Appliances Co. v. Gomery, 269 U. S. 177, 184, 46 S. Ct. 42, 70 L. Ed. 222; Hollister v. Benedict & Burnham Mfg. Co., 113 U. S. 59, 73, 5 S. Ct. 717, 28 L. Ed. 901; Grand Rapids Refrigerator Co. v. Stevens, 27 F.(2d) 243 (C. C. A. 6).

The sole element of novelty claimed for the tie loop of Michelis lies in having one bight extend beyond the other. This construction is common in numerous other uses, both differing and analogous, and when confronted with the problem of securing greater facility in mounting the loops, it required

no more than skillful selection from known devices to attain the desired end. Such use may have had novelty in connection with spring upholstery construction, but such novelty of use in a particular art does not alone justify a patent. Nor is it apparent that any advantage is gained in claiming a tie loop of this specific design as in combination with the springs to be joined. Once placed, the tie loop but performs its usual and well-recognized function and the useful purpose of the bights of different length has been completely fulfilled. The patentee was refused a patent on the loop as such and whether claiming it in combination with the other elements of the spring structure results in aggregation or in a true combination, we are convinced that it does not disclose the exercise of invention.

The same conclusion is applicable to the Holtfoth patent. Given the Young S type base frame, then old, the only problem which confronted Holtfoth was that of securing a firm union of the two ends of frame after bending to the shape desired. Overlapping or telescoping the two ends of metal parts to be joined, whether such parts be tubular, flat, or of other shape, is one of the commonest and most used means of securing union in every art. To produce the Holtfoth joint, with such slight adaptation as was necessary, required no more than mechanical skill and familiarity with common practice and expedients. After union the purpose of the telescoping was subserved. If there was no invention in that, such invention is not found in enumerating, as elements in combination, the other features of the spring construction.

The prior art discloses nothing precisely like the S base frame construction of the patent to Young, No. 1,058,285. The base frames of spring seat cushions were at first made of wood to which the upholstery cover was tacked. This necessitated a binding or tacking strip and by natural evolution the art soon developed the use of a groove into which the upholstery cover was laid and in which a metal or wooden binding strip was sunk, securing the cover. Patents to Henry, No. 941,875, and to Hale, No. 734,701, are examples. The use of a tacking insert, in which a wooden or fiber strip was held in a metal groove, was also developed. Kilburn & Budd, No. 897,541; Budd, No. 944,662; and Hale, No. 884,730. In other patents the edge of the upholstery cover was wrapped around a clamping strip and this strip was then inserted into a flat groove at right angles to the direction of tension or in such manner that it would not slide out. The up-

holstery cover was thus hooked in its channel. Foster, No. 1,020,407; Ostrander, No. 847,023. In several patents, also, use had been made of the single U-channel for clamping woven metal fabric (Fisher, No. 771,-866) or springs (Van Cise, No. 804,352), against tension; and of the double U-strip, or a flat strip folded twice upon itself, for the purpose of holding the edges of leather, in one case, and of window shade fabric, in another, in oppositely disposed grooves. Lieb, No. 233,154; Michel, No. 241,689; compare, also, Norton, No. 304,350. In each of these last, however, the clamping was produced by flat surface tension when the double U-strip was heavily compressed. The patent to Brink, No. 1,061,218, is also suggestive, in that the upholstery cover is held by a drawstring in the upper groove of an S-frame and the springs in the lower groove.

It remained for Young, however, to conceive the idea of using a bead upon the edge of the cover and of confining this within the outer groove of the S-frame, and the adjacent springs within the inner groove, by merely compressing the flanges. The cover is thus held by the narrowed opening rather than by surface friction and the necessity of all tacking is avoided. The nearest approach to this idea of a single S-frame having this double function is, we think, found in the patent to Young, No. 1,014,736, in which a similar S-strip is used to clamp the oppositely disposed edges of parallel rows of springs in a spring seat construction, or in the patent to Brink, supra. But a number of problems were presented in devising the S base rim which did not confront Young in the patent just mentioned. In devising the base rim it was necessary to protect the upholstery cover against cutting or contact with sharp edges. It was necessary also to confine it permanently within its channel against varying stresses and strains. This last Brink did not accomplish as well. These problems Young solved by the apparently simple, but we think inventive, thought of placing the bead of the cover in the lower and outwardly facing groove, whence the cover passed over the curved portion of the S, and the spring edges in the upper or inwardly facing groove, and merely clamping the edges of the two flanges to secure the cover and springs when so placed. The rim so devised has all of the advantages of the much heavier and much more expensive woodframes and the great utility of firmly and permanently holding the upholstery cover without tacking and protecting it against cutting and wear. The use

of this frame has been highly successful commercially. A large number of other devices have been designed apparently with the idea of securing advantage of its simplicity and utility without infringing the patent itself. Up to the present alleged infringement, the patent has been generally respected in the art. We have no doubt that the patent involved invention, was not anticipated, and is infringed.

The strongest argument on behalf of the defendant-appellant is that in view of the prior known uses of the double U-strip, offering oppositely disposed grooves for clamping fabric or springs or other material, no invention lay in the concept of using such a strip for a base rim or in pinching the beading of the cover in the groove, in place of the wood or fiber tacking strip in devices of the latter sort; that such invention could be exercised, in view of this prior art, only in the adaptation of the old device to the new use; and that Young merely disclosed in his patent the well-known double U-frame without any adaptation thereof to the needs of the new use. It is thus urged that the true invention lay in the practical adaptation of this idea, of oppositely disposed grooves for holding spring and upholstery cover, by designing the S-frame in such manner and shape as to present leverage surfaces upon which the clamping tools could operate; and that this concept and reduction to practice, which made the device practical and gave to it most of its utility, was the work of one Hawes, an employee of the Young Industries. It may be conceded for the purposes of this opinion that a patent for an impractical device or one which is inoperative will not be held to anticipate an invention which is highly practical and useful even though it bears some similarity in form and concept to the earlier patented device. Compare Lovell v. Seybold Mach. Co., 169 F. 288 (C. C. A. 2). In the present case, however, we are convinced that the patent in suit is not without utility and that the asserted improvement of the Hawes S construction over the double U form of the patent has reference to the matter of commercial production rather than to intrinsic utility and the advance made by Young. The basic idea and inventive concept were those of the patentee. He showed the double U base rim as the preferred form of his invention. It is perfectly possible to utilize this preferred form in structures of the type shown. Speed of operation and quantity production in this precise form are perhaps impractical, but the disclosure sufficiently covers the later commercial forms. It is unnecessary to give the claims a broad construction such as was disallowed in our decisions of Firestone Tire & Rubber Co. v. Seiberling (C. C. A.) 257 F. 74, 79, 80; National Malleable Casting Co. v. Buckeye, etc., Co. (C. C. A.) 171 F. 847; etc. The claims read fully upon the defendant's device and upon the Hawes particular S form. Under these circumstances the most that can be said in behalf of the Hawes S design is that if a patent had issued to him for this improvement, neither he nor Young could have manufactured the improved device without license from the other. We have so frequently held that mere improvement upon a patented device, without departure from the basic concept and mode of operation, does not avoid infringement, that citation of precedent seems unnecessary. Farrington v. Haywood (C. C. A.) 35 F.(2d) 628; Gordon Form Lathe Co. v. Walcott Mach. Co. (C. C. A.) 32 F.(2d) 55.

We therefore conclude that the judgment of the District Court dismissing the bill as to the claims in suit of the patent to Holtfoth, No. 1,439,891, for lack of infringement, be affirmed as to said dismissal upon our finding that said claims are invalid for want of invention; that the decree of the District Court finding the claims of the patent to Michelis, No. 1,428,701, valid and infringed, be reversed; and that said decree of the District Court finding the claims in suit of the patent to Young, No. 1,058,285, valid and infringed, be affirmed. The cause is remanded to the District Court, with instructions to modify the decree in accordance with this opinion. The master should be instructed also to ascertain and report a reasonable royalty, so that it may be adopted as the measure of damages, if such adoption should seem to the court to be appropriate. The costs in this court will be borne in equal proportions by the two parties here.