### UNITED SHOE MACHINERY CORPORATION v. WILLIAMS MFG. CO.

#### No. 1016.

District Court, S. D. Ohio, W. D.

July 21, 1939.

Fish, Richardson & Neave, of Boston, Mass., for plaintiff.

Toulmin & Toulmin, of Dayton, Ohio, for defendant.

DRUFFEL, District Judge.

The court makes the following findings of fact and conclusions of law.

This is a patent infringement suit brought by United Shoe Machinery Corporation, a New Jersey corporation, against the Williams Manufacturing Company, an Ohio Corporation, on McFeely patent No. 1,558,737 and on Hoyt patent No. 1,508,394. The claims in suit are claims 6 and 85, 23 and 91, and 42 of the McFeely patent and claims 19 and 21 of the Hoyt patent. Plaintiff is the owner of the patents in suit and has been the owner thereof at all times since said patents respectively were issued.

The charge of infringement is based on defendant's use of four "Calzera" automatic heel seat lasting machines purchased by defendant from Moenus Maschinenfabrik A/G, Frankfort A/M, Germany, three in 1933 and one in 1934, which machines have been used continuously by the defendant since said dates.

The McFeely patent in suit discloses a power-operated heel seat laster which automatically performs, in a fraction of a second, the operation of heel seat lasting. Heel seat lasting involves conforming the upper materials to the contour of the heel end of the last, wiping the marginal portions or "lasting allowance" of the upper materials, around the heel end of the last, inwardly over an insole on the last, and fastening it to the insole in lasted position.

The McFeely patent in suit discloses, and the claims in suit are directed specifically to, certain features of construction which render the machine capable of operation on a wide range of sizes and shapes of shoes.

The tacker-wiper claims, Nos. 6 and 85, are specifically directed to tacking units which cooperate with the wiper plates in the performance of the heel seat lasting operation, the tackers moving with the wiper plates, both in preliminary manual adjustment of these parts to accommodate shoes of different sizes and in the subsequent power operation of the machine.

The sliding heel band adjustment claims, Nos. 23 and 91, are specifically directed to mechanism in which the heel band is adjustable lengthwise of the last, to accommodate shoes of different sizes, and in such adjustment the heel band slides relative to its side supporting members and to its pressure members.

Claim 42 is directed to a machine having the general characteristics and sequence of hold-down movements of that shown and described in the patent, one element of which machine is manually adjustable means for determinately varying the amount of vertical movement of the hold-down.

The machine shown in the McFeely patent in suit is the first automatic heel seat laster which ever went into commercial use. Prior to the advent of this machine, heel seat lasting had been done principally on so-called "hand method" or "bed" machines which involved repeated manipulations of levers, foot treadles and various other appliances by the operator, and was a time-consuming and laborious operation, with non-uniform results.

Machines of precisely the form shown in the McFeely patent in suit were manufactured by the plaintiff, under the designation "Model A", for a period of years. Subsequently, similar machines, differing from that shown in the McFeely patent in that the heel band pressure mechanism was made in accordance with the Hoyt patent in suit, were manufactured by the plaintiff under the designation "Model B". These models were superseded by the plaintiff's "Model D" and "Model E" automatic heel seat lasters, which models, like the "Model B" machine, employed the Hoyt improvement in heel band pressure mechanism, and which differ otherwise from the precise showing of the McFeely patent in that in these models the tacks are driven through holes in the wipers instead of at a predetermined distance beyond the edge of the wipers. These differences do not affect the principle or mode of operation of the machine as regards the subject matter of the McFeely claims in suit and all of said models have embodied the features of construction to which said claims are directed.

The features of construction covered by the McFeely claims in suit are of large practical importance.

Defendant's machines are substantially similar to the machines shown in the McFeely patent in suit, modified by the use of the heel band pressure mechanism of the Hoyt patent in suit, and similar to the plaintiff's "Model D" and "Model E" in that in them the tacks are driven through holes in the wipers instead of at a predetermined distance beyond the edge of the wipers.

In defendant's machines the tacker-wiper combination is differently mounted and operates in a slightly different manner than that taught by the McFeely patent, but said machines employ substantially the same means shown in the McFeely patent and covered by McFeely claims 6 and 85.

The heel band adjustment in defendant's machines is substantially identical with that shown in the McFeely patent in suit and embodies the subject matter described in the sliding heel band adjustment claims of the McFeely patent, claims 23 and 91.

Modifications said to have been made in these machines in 1936 by the removal of certain wing screws and clips do not affect the operation of the machine nor avoid infringement of said claims 23 and 91.

Defendant asserts that the use of said wing screws and clips in its operations is unnecessary and that it does not intend to restore the same, and the Court so finds.

Defendant's machine produced in court had a stop for determining the amount of vertical movement of the hold-down. This stop can be adjusted by loosening a screw which attaches the stop to the frame and putting in or removing a shim, and by this manipulation the vertical movement of the hold-down may be determinately varied. Originally, defendant's machine had a form of adjustable stop similar to that shown at "X" on the photograph of the Moenus automatic heel seat laster, Plaintiff's Exhibit 10. Whichever of these forms is used, the machine has manually adjustable means for determinately varying the amount of vertical movement of the hold-down.

Defendant was notified by plaintiff on or about January 28, 1936, of its alleged infringement of the patents in suit by its use of said machines, and continued thereafter to use said machines.

Defendant's machines infringe all of the claims in suit of the McFeely patent in suit, Nos. 6 and 85, 23 and 91 and 42.

The Hoyt patent in suit No. 1,508,394 describes a form of "fastening inserting machine" embodying certain features which the patent says may be usefully employed in other types of machines.

One of the features of construction disclosed in said Hoyt patent relates to heel band pressure mechanism in which there are unyielding connections to the pressure members which force the open ends of the band against the shoe and separate yielding

means operating on each side of the band adjacent to the bight of the band to press such portions of the band against the shoe, said latter means comprising arms loosely mounted on the supporting means for the band and means normally operative to press said arms against the band. Claims 19 and 21 of the Hoyt patent are directed to this arrangement.

The arrangement of heel band pressure mechanism disclosed in said Hoyt patent and covered by said claims is of practical importance and has been used in all of plaintiff's commercial automatic heel seat lasters since the "Model A".

The heel band pressure mechanism of defendant's machine, as it existed up to and at the time this suit was brought, was identical with that shown in the Hoyt patent and described by said claims 19 and 21.

The so-called "set screws" or adjusting screws which are present in the arms mounted adjacent the bight of the heel band, both in the defendant's machines and in the plaintiff's "Model D" and "Model E" machines, do not interfere with the function of these arms in swinging about their pivot or in applying pressure to the corners of the band during the operation of the machine, but only regulate the extent of this swinging movement.

Defendant's machines infringe said claims 19 and 21 of said Hoyt patent.

The features of construction defined in the tacker-wiper claims of the McFeely patent in suit, Nos. 6 and 85, were new and useful.

The features of construction defined in the sliding heel band adjustment claims of the McFeely patent in suit, Nos. 23 and 91, were new and useful.

The features of construction defined in claim 42 of the McFeely patent in suit were new and useful.

The features of construction of the heel band pressure mechanism defined in claims 19 and 21 of the Hoyt patent in suit were new and useful.

The earlier McFeely patent No. 1,129,-881 discloses a machine in which, during the power stroke, after certain "feelers" or stops on the tackers contact the shoe or the heel band, the wiper plates are withdrawn during the rest of the power stroke of the machine. This patent discloses no means for adjusting the position of the wipers or tackers preliminary to the power stroke, nor any lengthwise adjustment of the heel band in which the band slides relative to its supports, and pressure members, nor any adjustment for varying the amount of vertical movement of the hold-down. This patent does not disclose the sequence of operations of the McFeely patent in suit, as defined in claim 42 in suit, nor does it disclose the inventions covered by any of the McFeely claims in suit or the inventions covered by the Hoyt claims in suit.

The Pym patent No. 1,368,968 discloses no tackers. The machine of this patent was neither designed nor intended to perform a complete heel seat lasting operation. Pym provided no lengthwise adjustment for his heel band, and no such sliding adjustment as is called for by claims 23 and 91 of the McFeely patent in suit. The Pym patent does not disclose the sequence of operations called for by claim 42 of the McFreely patent in suit, nor any means for adjusting the amount of vertical movement of the hold-down. Pym does not disclose the heel band pressure mechanism described in the Hoyt patent in suit and called for by claims 19 and 21 thereof in suit.

The McFeely patent in suit, No. 1,558,-737, does not disclose the heel band pressure mechanism described in the Hoyt patent in suit and called for by claims 19 and 21 thereof in suit.

The earlier McFeely patent No. 1,129,-881 and the Pym patent No. 1,368,968 do not disclose, either separately or in combination, the subject matter of the claims in suit of the McFeely patent No. 1,558,737 in suit or of the Hoyt patent in suit No. 1,-508,394.

The prior patents cited by defendant against claims 23 and 91 of the McFeely patent in suit, such as the Brock patents Nos. 601,935, 1,002,818, and 1,188,616; Cavanagh No. 1,130,142, and others, taken singly or in combination, fail to disclose the sliding adjustment of the heel band disclosed in the McFeely patent in suit and claimed in claims 23 and 91 thereof.

Defendant offered in evidence many other prior art patents in addition to those specifically mentioned above. These patents, either alone or in combination, fail to disclose the inventions described in the McFeely and Hoyt patents in suit and called for by the claims in suit.

The inventions shown in the McFeely and Hoyt patents in suit and described in

the claims in suit were new and useful and involved invention over the prior art.

The McFeely patent in suit, No. 1,558,737, is valid as to the claims in suit, Nos. 6 and 85, 23 and 91, and 42.

The Hoyt patent in suit, No. 1,508,394, is valid as to claims 19 and 21 in suit.

Defendant has infringed said claims 6, 85, 23, 91 and 42 of the McFeely patent in suit by the use of its Moenus automatic heel seat lasting machines.

Defendant has infringed said claims 19 and 21 of the Hoyt patent in suit by the use of its Moenus automatic heel seat lasting machines.

Plaintiff is entitled to an injunction against further infringement of said claims, to an accounting for past infringement thereof, and to its costs.

## Opinion.

After careful consideration of the evidence including the prior art, and an examination of the authorities cited in behalf of plaintiff and defendant, this Court finds as a matter of fact that the heel seat laster covered by the McFeely patent in suit is the first automatic heel seat laster commercially practicable; that by reason thereof the heel seat lasting of shoes is accomplished four times as fast as by the prior hand method with a consequent reduction in cost; that the workmanship of the heel seat of a shoe lasted by the McFeely machine is far superior in that all are uniform, whereas when done by hand the workmanship varies according to the skill of the operator, which also resulted in a much larger percentage of damaged shoes than is now the case when the heel seat is lasted by the machine.

The Court also finds as a matter of fact that this machine is a commercial success as evidenced by the fact that more than twelve hundred are in use throughout the world.

The Court also finds as a matter of fact that Claims 6 and 85 of the patent in suit (tacker-wiper combination) are valid and have been infringed by defendant; that the defense of anticipation has not been sustained by defendant; that while the McFeely patent in suit No. 1,558,737 embraces many elements of the McFeely patent No. 1,129,881, the earlier McFeely patent lacked, so far as it relates to Claims 6 and 85, certain elements which prevented it from being commercially successful; that is to say, among others, it would not permit of a successful operation upon a range of shoe sizes;

the operation of the tackers and wipers could not be controlled with accuracy, or in other words, adjusted as are the tackers and wipers in the machine covered by the patent in suit; and also, immediately before the tacking movement the wipers would be retracted partly to permit of the tacking and in so doing have a tendency to pull the upper from the insole, which would tend in some instances to and in many operations did make an imperfect job, if not damage the shoe. This was overcome in the machine covered by the patent in suit by the wipers moving in toward the shoe, holding the upper in place rather than pulling the upper away from the last, prior to the tacking as in the earlier McFeely patent.

The Court also finds as a matter of fact that while the tacker and wiper combination in defendant's machine is differently mounted and operates in a slightly different manner than that taught by the McFeely patent in suit, this Court is obliged to hold that it infringes plaintiff's patent in suit because it employs substantially the same means. Gordon Form Lathe Co. v. Walcott Machine Co., 6 Cir., 32 F.2d 55, 61; Reynolds Spring Co. v. L. A. Young Industries, 6 Cir., 36 F.2d 150, 152.

The Court also finds as a matter of fact that Claim 42 (a general claim covering the machine based on the McFeely patent in suit) is valid and infringed by the defendant. On the issue of fact as to infringement the Court holds with the plaintiff, based on the testimony of witness Ryan, who testified that the hold-down adjustment mechanism was in place on the machine when he saw it at defendant's plant. This testimony is supported by the "Moenus" catalogue, plaintiff's Exhibit No. 10, showing the member marked "X" in place. Also by the fact that although defendant's machine exhibited in court did not have the member "X" affixed to the machine, nevertheless there were threaded openings to which it had been attached. This fact, together with the testimony that the clips connecting the heel band mechanism were sawed off, and the bight springs removed in an attempt to avoid infringement, tends to discredit defendant's witnesses' testimony that their machines were being operated without the hold-down adjustment.

As to Claims 23 and 91 of McFeely and Claims 19 and 21 of Hoyt, the Court finds as a matter of fact that they are valid and

infringed by defendant, notwithstanding the sawing off of the clips to which the wing nuts were fastened.

On the issue of fact of the sawing of the heel band clip the Court is of the opinion and so finds that because of the standard of shoe manufactured by defendant, said heel seat lasting machine may be used without the use of said clip and that the defendant has sustained the burden of proof that they do not intend to continue using the lasting machine with the attached clips.

Specifically, as to the heel band adjustments covered by the McFeely and Hoyt patents, defendant offered evidence as to the state of the prior art, and strongly contends the McFeely patent in suit is anticipated by the earlier McFeely patented heel band mechanism. On this subject the Court finds as a matter of fact that Hoyt made a valid and new contribution to permit of the centering of the shoe in the machine, and to assure equal pressure at both sides and at the end of the heel; that as to the McFeely patent, although the McFeely patent in suit does contain some of the elements of the earlier McFeely patent, new elements were introduced that were novel and helped make the McFeely heel seat laster in suit the commercial success that it is.

Specifically, on the question of anticipation by the earlier McFeely patent of the patent in suit, the Court in holding the same valid and infringed is obliged to follow the principle enunciated in Consolidated Window Glass Co. v. Window Glass Machine Co. et al., 3 Cir., 261 F. 362, Barber v. Otis Motor Sales Co., 2 Cir., 240 F. 723.

### Interlocutory Decree.

This cause having come on to be heard on the pleadings and proofs and having been argued by counsel and considered by the Court, it is hereby ordered, adjudged and decreed:

1. That United States Letters Patent to McFeely No. 1,558,737 is good and valid in law as to claims 6, 23, 42, 85 and 91 thereof and that said McFeely was the original and first inventor of the improvements patented therein.

2. That United States Letters Patent No. 1,508,394 to Hoyt is good and valid in law as to claims 19 and 21 thereof and that said Hoyt was the original and first inventor of the improvements patented therein.

3. That the plaintiff, United Shoe Machinery Corporation, is the owner of the entire right, title and interest in and to said Letters Patent and each of them.

4. That the defendant, the Williams Manufacturing Company, has infringed said Letters Patent and each of them by using heel seat lasting machines embodying the inventions described and patented by said Letters Patent and each of them and in particular by claims 6, 23, 42, 85 and 91 of said McFeely patent and by claims 19 and 21 of said Hoyt Patent.

5. That a perpetual injunction issue out of and under the seal of this Court directed to the said defendant, the Williams Manufacturing Company, its officers, agents, clerks, servants and workmen, enjoining and restraining them, and each of them, from directly or indirectly infringing said Letters Patent No. 1,558,737 and 1,508,394, or either of them, as to said claims, and from contributing to or aiding and abetting the infringement thereof by others.

6. That the plaintiff recover the profits, savings and advantages which defendant has derived, received or made by reason of its said infringement of said Letters Patent and each of them, and also all damages which the plaintiff has sustained from said infringement, and that this cause be referred to a Master of this court to be appointed to take and state an account of such profits, savings and advantages and to assess such damages and to report thereon with all convenient speed; and the officers, employees and agents of said defendant are hereby directed and required to attend the aforesaid Master from time to time, as required, and to produce before him such books, papers and documents as relate to the matters at issue, and to submit to such oral examination as said Master may require.

7. That as to United States Letters Patent to Pym No. 1,368,968, which was withdrawn from suit prior to the trial, the bill of complaint be dismissed.

8. That plaintiff recover its costs.

This decree shall be suspended for a period of ten days from date and may be superseded pending an appeal to the United States Circuit Court of Appeals on the giving by defendant of a supersedeas bond in the sum of $10,000 with surety to be approved by this Court.