**AUTOMOTIVE INDUSTRIES, INC.,**
**Plaintiff,**

v.

**GENERAL MOTORS CORP., Defendant.**

**Civ. A. No. 23500.**

United States District Court
E. D. Michigan, S. D.

Aug. 17, 1965.

Joseph Farley, Detroit, Mich., for plaintiff.

Arthur Raisch, Detroit, Mich., for defendant.

TALBOT SMITH, District Judge.

This patent suit involves automobile door handles, the kind commonly found on the inside panel of an automobile door, the handle serving as both an arm rest and a pull-to for closing the door. This action was filed some eleven years after the alleged infringement began, but defendant, waiving any defense of laches, urged not only that the patent was invalid but also, somewhat belatedly,[1] that there was no infringement.

The patent, essentially, consists of a base in the form of a hollow plastic box, open-topped, shaped in the form of a C, plus a cushion assembly mounted upon and closing the open top of the box. The cushion assembly consists of a body of sponge rubber covered with fabric or artificial leather. In one form of the arm rest this is mounted directly upon the plastic base. In the other, the cushion assembly consists both of the sponge rubber and a plate upon which it is cemented, the assembly being attached to the plastic base from the underside by

---

1. The Pre–Trial Order sets out that infringement is admitted, if the patent is valid, but at trial defendant's counsel urged to the court that the stipulation as to infringement was actually less broad, and, furthermore, that a material difference between defendant's arm rest construction and plaintiff's patent had, in the masses of blue prints relating to arm rests, been inadvertently overlooked. The

court, satisfied of counsel's good faith, and in the exercise of its discretion (Rule 60(b), Federal Rules of Civil Procedure), relieved defendant from such admission. "I am going to relieve counsel of the stipulation as asked, but I am going to adjourn this case to give you time to prepare, all parties time to prepare." Counsel, however, elected to proceed.

screws which pass through openings in the base, reinforced with bosses, and turn into the plate. In addition, the plastic base contains apertures reinforced with bosses extending from the underside of the base obliquely upwardly, through which the screws are passed in order to secure the arm rest to the inner panel of the door. Such are its essentials. The combination, thus described, was patented by Elmer Wettlaufer (U.S. Letters Patent No. 2,601,677) on June 24, 1952 and assigned by him to the plaintiff in the same year on September 30th. The patent in suit contains twenty-two claims.

In somewhat less technical language, the plaintiff, in oral argument, defined the alleged unique characteristic of the claimed invention as consisting of a combination of elements, comprising a plastic base, a metal plate, a rubber pad mounted on the plate, and a trim cover stretched around the pad and cemented to the under side of the metal plate, the metal plate being secured to the plastic base by the screws extending up through the base. In this combination of elements, according to plaintiff, "the metal plate is the important part."

In order to pass upon the defendant General Motors' principal defense, it is necessary to trace the evolution of the automobile arm rest for a number of years. Certain of the prior patents will be referred to by name in our consideration of the twenty-two claims made. The area of arm rests for automobiles has, obviously, provided a fertile field for inventors. We will not here examine all patents introduced into evidence, but briefly, and in their chronological order, we will review the teachings of certain of them.[2] First, the early Owen patent, No. 1,490,538 (1924) was for a combined "utility receptacle and arm rest". It consists of a hollow molded shell, reinforced with longitudinal and transverse webs or ribs molded integrally with the base. The open top of the box is closed by a cover which supports a rubber cushion. The base is secured to its support by screws on the underside of the arm rest which (as in the patent in suit) are not visible to the user. We find a striking similarity between the General Motors accused arm rest, and both the Owens patent and that of Haines, shortly to be described.

The Flynn patent, No. 2,028,033 (1936) is for a combination arm rest and door handle. It (as is the patent in suit) is C shaped and consists of a hollow shell which is a metal stamping provided with a longitudinal reinforcing rib. The hollow base is closed and supports a fabric-covered rubber cushion.

The 1939 Haines patent, No. 2,178,788, has a close, if not conclusive, resemblance to the patent in suit. It, also, is for an arm rest and, bearing in mind the plaintiff's constant emphasis to us that his metal plate in his arm rest is "the important part" of his invention, we note that Haines embodies just such a plate. The Haines arm rest consists of a hol-

---

2. Excepting the patent to Haines, and Flynn, the Patent Office during the prosecution of application Serial No. 648,915 (abandoned) and Serial No. 75,456, which matured into the patent in suit, did not have before it the following prior art relied upon by the defendant and (together with Haines and Flynn, supra) introduced into evidence by defendant:

| | |
|---|---|
| 1,465,491 | Smith |
| 1,490,538 | Owen |
| 1,900,423 | Willey |
| 1,935,794 | Geyer |
| 2,151,195 | DeVoe et al |
| 2,224,371 | Witchger |
| 2,276,020 | Chlpka |
| 2,462,399 | Hinchman |

Scientific American, August 1945, "Automotive Plastics", pages 83, 84, 86

British Plastics and Moulded Products Trader, Vol. 11, May 1940, "New U.S.A. Products", pages 532, 533

British Plastics and Moulded Products Trader, Vol. 13, August 1941, "Plastics or Metals?", pages 68, 69, 70, 71

British Plastics and Moulded Products Trader, Vol. 14, July 1942, "Recent American Moulded Products", pages 102, 103, 104

Plastics, Vol. 2, January 1945, "Designing for Plastics", pages 21, 22, 23, 27, 103.

1936 GM arm rest, Nickles rendering, Giganic arm rest drawings, Inland Gunstock

low metal shell with an open top which is closed by a cushion assembly. This assembly consists of a plate which supports a pad covered by upholstery fabric overlapping the underside of the plate and tacked thereto. Haines describes the plate as "a wooden or other base member", suggesting that it be of wood, plastic or metal. The plate is secured to the top of the base by screws (#31) which pass upwardly through holes in the bottom of the base and which are screwed into the underside of the plate. Under our view of the case we need not consider the clearance between the support for the screws and the plate, although the same clearance is present in the General Motors arm rest and the teaching of the Wettlaufer patent is clearly the opposite.

Finally, the Chlpka patent, No. 2,276,020 (1942) should be noted. It is for an arm rest and utility light, one of the significant features of which is that the supporting box, which we have seen before, for the cushion, is of hollow plastic rather than metal. It is mounted upon the car door by conventional means which, at that time, was by slanting screws entering the bottom of the base and passing diagonally upwardly through the side wall, as in the 1936 General Motors arm rest.

The arm rest manufactured and sold by defendant, General Motors Corporation, and charged to infringe the Wettlaufer patent in suit, were introduced into evidence as plaintiff's exhibit 12 and defendant's exhibit NN, together with arm rests shown in the production drawings of the Fisher Body Division, General Motors Corporation.

The General Motors arm rest consists of a molded plastic box, or base, in the form of a shell which is generally rectangular in shape, having a bottom and four side walls, the box being open at the top and provided with reinforcing ribs or webs. The bottom of the base is provided with two screw holes reinforced with bosses through which screws are passed for securing the cushion in place. The bottom of the base also has two openings reinforced with bosses which extend obliquely upwardly from the bottom wall to the rear wall of the base, through which screws are passed for securing the base to its supporting wall, such as the inner panel of a vehicle door. The cushion consists of a sponge rubber pad supported upon and cemented to a metal plate. The cushion has cemented thereto a vinyl fabric cover. The reinforcing ribs extend about a quarter of an inch above the top surface of the reinforcing bosses or columns so that when the securing screws are passed through the vertical bosses, and turned into the metal plate, the metal plate rests upon the top peripheral edge of the base and the top surfaces of the webs, and the plate in its final assembled position has a clearance with the top surface of these bosses of from .030 (1/32) to .120 (1/8) of an inch to insure a clamping action between the metal plate and the reinforcing ribs or webs on the plastic base. The plate does not engage, is not supported upon or clamped against the top of the columns and does not rest on the columns.

From 1936 through the model year 1951 General Motors used and sold to the public on its various models a combination arm rest and door pull-to referred to as the "1936 General Motors arm rest" (Ex. T). This 1936 arm rest is shown in detail in defendant's Ex. C–5. It consists of a metal frame, C-shaped in outline as viewed from above, U-shaped in section as viewed from the end, with the frame terminating in end faces which rest against the door panel and hold the arm rest in place. A molded rubber pad is assembled upon and cemented to the metal frame, with a trim cover of fabric or "Koroseal" stretched over the rubber pad (to which it is cemented) and tucked under the edges of the frame. The cover is clamped to the frame and held securely thereto by a bottom metal cover. The metal cover is put over the turned-under fabric and small screws are passed upwardly through the holes in the metal cover and threaded into the small holes in the metal

frame, thus clamping the metal cover to the frame. The assembled arm rest is then secured to the door of the automobile by means of large screws which pass obliquely upwardly through holes in the metal frame and screw into the panel of the door.

In the Spring of 1945 Mr. Nickles, one of the General Motors Styling Department, was assigned the task of improving upon the 1936 arm rest (with which he was familiar) in order to make an article more pleasing in appearance, lighter and more durable, and easier to manufacture. In the execution of this assignment, he made an artist's drawing of an arm rest (repeatedly referred to in the record as the "Nickles rendition"), showing a combination arm rest and pull-to consisting of a brown plastic base, C-shaped when viewed from above, having a red trim covered cushion supported on the base. The joint between the plastic base and the cushion was covered by a trim molding. In the bottom of the plastic base are shown oblique screw holes similar to those above-described, which had been used with the 1936 General Motors arm rest. The plastic base was hollow in order to avoid the waste of material. The drawing was acceptable and was passed on to the General Motors Engineering Department.

Mr. Frank Giganic, who was a draftsman-designer with General Motors Styling, was then given a 1936 General Motors arm rest, was shown the Nickles rendering, and was directed to design a plastic base for the bottom of the arm rest. (There had been a definite trend toward the use of plastics in the automotive industry even prior to World War II, a trend heavily accentuated during the War because of material shortage.) Accordingly, Mr. Giganic designed a plastic arm rest and in May 1945 completed drawings thereof. A model was made, it was screwed on a door and tested, and "it looked good." The arm rest shown in the Giganic drawings (defendant's Exhibits E and F) is the same in structure as the arm rest shown in figures 5 through 9 in the

Wettlaufer patent and described in the patent specification. (We will later trace the origin of the similarity.) The bases are the same, including the same ribs, columns, apertures, the sponge rubber cushion members. The covers are the same, and both covers are secured to the base in the same manner, that is, by clamping the edges of the cover to the arm rest. His arm rest, moreover, followed the 1936 model in that it was secured to the inner surface of the door panel with oblique screws passing through shouldered openings in the base, so that no change in the position of the screw holes on the door panel would be necessary. In employing a thin plastic shell, with reinforcing webs, for the base, Mr. Giganic testified that "it was the only logical common sense thing to do", and that its internal construction was his own original concept, "just plain common sense for getting an article made to do this particular job." In this particular design Mr. Giganic did not employ a plate underneath the sponge rubber cushion member since such would make a harder, less resilient arm rest.

We turn now to the activities of the patentee, Mr. Elmer Wettlaufer, with respect to the patent. His brother, Mr. Al Wettlaufer, obtained the Nickles rendering from General Motors Styling and gave it to his brother, the patentee. From this came the patentee's first consideration of arm rests. It was clear to the patentee from the Nickles rendering (which was in color) that the brown part of the arm rest, the lower part, was plastic and the red upper part was a cushion, either cloth or leather covered. The patentee learned this also from the Giganic drawing, Exhibit F, which in terms specifies a plastic base and a sponge rubber cushion with a Koroseal cover. At the patentee's deposition, he produced an exact copy, Exhibit KK, of the Giganic drawing, Exhibit F, complete except for a tearing off of the corner normally carrying source identification, which drawing, it was conceded, was before patentee's draftsman Nath when he drew Exhibit 15 in the Fall of 1945. In

fact, Exhibit 15 is an exact copy of the Giganic drawing, Exhibit F.

Thus before the patentee conceived the arm rest shown and described in the patent in suit he was in possession of the General Motors Styling Department's drawing (the Nickles rendering) as well as the Giganic drawing, Exhibit F. From these instruments he knew that an arm rest would have a hollow plastic base, with a cushion secured to it, and that the base would be mounted on the door in a manner represented by the 1936 General Motors arm rest. From the Giganic drawings he knew also the exact details of the arm rest shown in figures 5 through 9 of his patent. It is clear that the patentee did not conceive the arm rest shown in such figures but derived the same from the Nickles rendering and the Giganic drawings, Exhibit F.

The patentee's claims are twenty-two in number, all of which, except claims 20 and 21, are asserted by the plaintiff to be infringed by defendant's arm rest. The first we here reproduce virtually verbatim, broken down into its various elements. It describes an arm rest comprising a substantially C-shaped hollow base member (this is element A of the 1936 General Motors arm rest, other elements of which will be hereinafter referred to as "element" A, B, etc.) having end walls and being of substantially U-shape in cross section (element B), a pair of apertured recessed shoulders in the bottom wall of said member (element C), each of said end walls having an aperture therethrough (element D) one of said wall apertures being aligned with one of said shoulder apertures (elements C and D), the other said wall apertures being aligned with the other of said shoulder apertures (elements C and D), said aligned apertures being adapted to receive means for securing said base member to a surface (element E), a resilient member carried by said base member (element F), and means securing said resilient member to said base member (element G). It is clear that the first claim of the Wettlaufer patent in suit

corresponds element for element with the 1936 General Motors arm rest.

Claim 2 adds to Claim 1 only a phrase referring to the screws for holding the cushion, referred to therein, as the "closing means" to the plastic arm rest base. Thus to the Giganic drawings (Exhibits G and F) patentee has added the device shown in the Haines patent (see above) for securing the cushion covering to the base.

Claim 3, again, is merely a re-description in other terms of the 1936 General Motors arm rest. It will be observed, and is made clear in Exhibit D, that there is complete correspondence, element for element, of this claim with the 1936 arm rest. Claim 4 is dependent upon Claim 3, adding to the claim a cushion member which is secured to the base of the arm rest by screws passing upwardly through the base of the arm rest into the cushion member. This, also, is the device employed in the Haines patent, supra.

Claims 5 through 8 (as well as 1 and 3) and 10, 11, 14, 15 and 19, all generic, involve and relate to all forms of the arm rest shown in the Wettlaufer patent in suit, including the form shown in Figures 1 to 4, where the cushion assembly rests upon a supporting plate, as well as that in Figures 5 to 9, where the cushion assembly is mounted directly upon the plastic base. These claims all go back to, and substantially embody the elements shown in the arm rest portrayed in the Giganic drawings (Exhibits E and F), the substance of which is also present in the Nickles rendering.

Claims 9, 16, 17 and 18 and 22 each recites, as an element, hollow columns which are formed as part of the stiffening webs, Figure 1, and that the cushion rests upon and engages these columns, being supported by and clamped thereto. Thus such claims are specific to the arm rest shown in Figures 1 through 4. In defendant's arm rest, however, neither the cushion nor its supporting plate rests upon or is clamped to the reinforcing columns or bosses but is spaced from the

top of these columns by from 1/32 to 1/8 of an inch.

Claim 10 of the patent in suit corresponds directly with the Owens combined receptacle and arm rest patent, described supra. In brief it describes an arm rest for attachment to a supporting wall, it (the arm rest) comprising a hollow plastic box, open at the top, with a cushion carried by a casing closing the open top, the casing forming wall portions, together with stiffening webs and apertures for the securing elements. Claim 12 depends upon Claim 10 and simply adds thereto longitudinal stiffening webs, thus merely adding the Owens stiffening webs to the Giganic drawings. The device of adding longitudinal stiffening webs, we note, was also employed in the Inland Gunstock, a gunstock introduced into evidence and designed during World War II for use in both the tropics and the Arctic, localities in which existing gunstocks became either too hot or too cold to handle. Claim 13 also depends upon Claim 10 and adds thereto both longitudinal and transverse stiffening elements or webs for the plastic base. These, also, we have seen in the Owens patent and have long been conventional practice in the plastic molding art (Giganic drawings, Geyer patent No. 1,935,-794, also Inland Gunstock).

In the arm rest shown in the patent in suit, the molded base serves the same purpose and function as the base in the 1936 arm rest, as the plastic base in the Nickles rendering and the Giganic drawings, as the bases in the Chlpka and Haines patents, supra, and as the molded base described in the Owen patent. The rubber cushion with its trim cover serves the same purpose and function as the rubber pads and cushions utilized in the prior art arm rests. The oblique openings through the plastic base of the patent in suit and the screws which pass obliquely therethrough serve the same purpose and function in the same manner

as the oblique openings and securing screws in the 1936 General Motors arm rest, in the Nickles rendering, in the Giganic drawings, those shown in the Smith patent, No. 1,465,491, and the Owen patent, supra. The reinforcing ribs in the arm rest in the patent in suit [3] serve the same purpose, and function in the same manner as the reinforcing ribs shown in the Giganic drawings, and described in prior patents,[4] as well as the molded plastic gunstock hereinbefore described. The hollow reinforcing columns or bosses (24 and 26) in the patent in suit also perform the same purpose and function in the same manner as the hollow reinforcing columns for the screws in the 1936 General Motors arm rest, the Giganic drawings, and the Willey (No. 1,900,423) and DeVoe (No. 2,-151,195) patents, as well as the plastic gunstock.

The arm rest shown in the Nickles rendering is C-shaped in plan and has a hollow plastic base and a cushion mounted on and secured to the base. The arm rest shown in Figures 1 through 4 of the Wettlaufer patent is the same as that shown in the Nickles rendering, except for the details of construction of the plastic base, and the details of securing the cushion to the base. Actually, with the Nickles rendering and the knowledge which was conventional in the plastic molding art at the time of such rendering, particularly with respect to the use of a hollow, thin walled plastic base or shell, reinforced with ribs, anyone having the rendering and the conventional knowledge could design the arm rest base shown in Figures 1 through 4 of the Wettlaufer patent.

Moreover, the manner in which the Wettlaufer cushion assembly is secured to the base is elementary, and found in the Haines patent which is directed to an arm rest having the same cushion assembly secured to the base in exactly the same manner as in the Wettlaufer

---

3. Ribs 8, 10, and 12.

4. Owen, No. 1,490,538; Willey, No. 1,900,-423; Geyer, No. 1,935,794; Flynn, No. 2,028,033; DeVoe, No. 2,151,195; Hinchman, No. 2,462,399. See, also, British Plastics and Moulded Products Trader, July 1942, p. 102.

patent. The incorporation in the claims of the Wettlaufer patent of the details of construction of the plastic base and the manner in which the cushion assembly is secured to the base, added nothing to the fund of public knowledge or the patentability of the claims.

The plaintiff as we have noted, asserts that the unique characteristics of the claimed invention consist of the combination of elements comprising a plastic base, a metal plate, a rubber pad molded on the plate, and a trim cover stretched around the pad and cemented to the underside of the metal plate, which metal plate is secured to the plastic base by screws extending up through the base. This is essentially the same combination shown in the Haines patent, No. 2,178,-788, a model of which was introduced in evidence. Haines is an arm rest consisting of a base made of metal in the form of a hollow shell with an open top which is closed by a cushion assembly. The cushion assembly consists of a plate which supports a pad covered by upholstery fabric. The fabric overlaps the underside of the plate and is secured thereto by tacks. The plate itself is secured on the top of the base by screws which pass upwardly through holes in the bottom of the base and are screwed into the underside of the plate. Haines described the plate referred to as "a wooden or other base member". This combination, described as the unique characteristic of the claimed invention, is precisely that shown in Haines, except Haines shows the cover tacked instead of cemented to the underside of the plate. This, however, (cementing rather than tacking) has been an obvious expedient in the automotive industry since long prior to 1945. A comparison of the defendant's arm rests shows that it follows the teachings of the Haines patent, and such arm rest, is, itself, an article in the public domain and unpatentable.

It is clear from the above that the arm rest shown in the patent in suit was merely an uninspired combination of items from the prior art, each item serving an old and familiar function, the whole providing no unusual consequences. Actually, even the listed "objects" of the claimed invention (an arm rest which may be molded from plastic,[5] secured by means which are both accessible and concealed, and serving, as well, the function of a door pull) were old and well known in 1945. Moreover, with respect to this combination of items, there were employed no new or unique techniques. There is no invention involved in making such an assemblage. Newcomb, David and Company v. R. C. Mahon Co., 59 F.2d 899 (C.A.6 1932); Bobertz v. General Motors Corp., 228 F.2d 94 (C.A.6 1955). It is clear that, given the Nickles rendering and the Giganic drawings (from General Motors Styling), there was sufficient before anyone having ordinary mechanical ability and without special skills to construct the plastic arm rest described in the Wettlaufer patent. Agawam Woolen Co. v. Jordon, 74 U.S. 583, 19 L.Ed. 177. And this is exactly what happened. When Mr. Wettlaufer received the Nickles rendering and started his new project of manufacturing an arm rest, he called into conference those experienced in the trade and they advised him as to the then-employed trade practices, such as the use of a plastic shell with reinforcing ribs, the use of reinforced (with bosses) screw holes, and the use of strengthening ribs in the thin, and expensive, plastic shell.

Plaintiff leans heavily upon the use of a plate underneath the cushion, which, as we have noted, he describes as "the important part." There is no need for us to pinpoint precisely the contribution made with respect to this plate by plaintiff's employees Auschuetz or Nath, if any, or defendant's employees Giganic

---

5. See, Scientific American, Aug. 1945, "Automotive Plastics", p. 83, 84, 86 (Def's Ex. G); British Plastics and Moulded Products Trader, Vol. 11 (pp. 532, 533) Ex.H; Vol. 13 (pp. 68–71) Ex. I; Vol. 14, pp. 102–104, Ex. J.; Plastics, Vol. 2, pp. 21–23, 27, 103, Ex. K.

and Nickles, since it all relates to a well-known practice. The Haines patent, years before, had used the plate idea. Such patent was, it will be recalled, for an arm rest which consisted essentially of a hollow base and a cushion in the form of a pad supported on a plate, the cushion being supported and secured to the base by screws passed through the base and into the pad supporting plate.

It is true that certain of the older arm rest bases were of metal, whereas Wettlaufer used plastic, but such substitution which industry today constantly employs, is not, without more, and if clearly known and indicated by prior art, a patentable advance in the art. Polymer Process, Inc. v. Cadillac Plastic and Chemical Co., D.C., 220 F.Supp. 563, 571, aff'd 337 F.2d 383 (C.A.6 1964). Nor do the provisions for strengthening, webs employed by the patentee, constitute a patentable invention. Such had been long established practice.

█ In short, all of the claims of the patent in suit are clearly void for want of invention. The whole of the prior art, much of which is outlined above, considered together shows, all of the claimed elements and their combination does not produce new and unusual consequences or involve more than the skill of a mechanic skilled in the art. The patent merely discloses old techniques well known in the plastic moldings art for fabricating an arm rest with a plastic support base, and old techniques known in the arm rest art for securing the arm rest to a wall of the automobile body and for mounting a cushion upon a plate secured to the base from underneath by screws. This is not patentable invention. Great Atlantic and Pacific Tea Co. v. Supermarket Equipment Corp., 340 U.S. 147, 71 S.Ct. 127, 95 L.Ed. 162.

█ As in Preformed Line Products Co. v. Fanner Mfg. Co., 328 F.2d 265, 267 (C.A.6 1964) we have turned "first [to the matter of] the validity of the patents. The Supreme Court has said that due to the greater public importance of the validity of a patent it is the better practice to inquire fully into

that issue. Sinclair & Carroll Co., Inc. v. Interchemical Corp., 325 U.S. 327, 330, 65 S.Ct. 1143, 89 L.Ed. 1644; Maytag Co. v. Murray Corp. of America, 318 F.2d 79, 80, C.A. 6." Under the view we have taken of the case it is unnecessary to discuss other points raised by the parties. And, having determined that the patent is invalid, this Court need not rule upon the question of infringement. Preformed Line Products Co. v. Fanner Mfg. Co., supra.

The foregoing opinion shall stand as the findings of fact and conclusions of law under the provisions of Fed.R.Civil Procedure ¶52(a). A judgment shall enter dismissing the complaint with costs to defendant.